### WESTERN NATIONAL BANK v. GERSON.

No. 526.    Opinion Filed September 13, 1910.

Rehearing Denied January 24, 1911.

**FIXTURES—What Constitutes.** A thing is deemed to be affixed to land when it is attached to it by roots, as in the case of trees, vines or shrubs, or imbedded in it, as in the case of walls, or permanently resting upon it, as in the case of buildings, or permanently attached to what is thus permanent, as by means of cement, plaster. nails, bolts or screws.

(Syllabus by the Court.)

*Error from District Court, Oklahoma County; George W. Clark, Judge.*

Action by Henry L. Gerson against the Western National Bank. Judgment for plaintiff, and defendant brings error. Reversed.

*Flynn & Ames,* for plaintiff in error.
*Everest, Smith & Campbell,* for defendant in error.

KANE, J.   The defendant in error, plaintiff below, commenced this action against the plaintiff in error, defendant below, to recover certain bank fixtures, of which he claimed to be the owner under a bill of sale.   The defendant claimed possession by virtue of a lease, and the question involved is whether or not the property in controversy is a fixture or a chattel.   The property in controversy consists of a bank counter, the railing, and two wall desks.   Upon the issues being joined, the case was tried to a jury, which returned a verdict in favor of the plaintiff, upon which judgment was duly rendered, to reverse which this proceeding in error was commenced.   The admitted facts are substantially as follows:   The banking room of the Western National Bank, which contains the property in dispute, is located on the south 90 feet of lot 1, in block 23, Oklahoma City, which was originally owned by the Oklahoma National Bank prior to 1893, which bank, prior to that time, constructed the building on said lot.   That the property in controversy had been used by the Oklahoma National Bank in Oklahoma City in a different building located on a different site before the completion of the building now and at the time of the institution of this action occupied by the Western National Bank.   Upon the completion of the new building the property in dispute was moved from the old site to the new and was established in the new building as soon as it was ready for occupancy and used by the owner as a bank.   The wall desks were let into the wall and were not supported upon the floor in any way.   Holes were driven into the wall, and into these holes wooden plugs were inserted, and the wall desks were fastened to these wooden plugs by screws or nails.   The bank counter, or railing, was a long counter running across the front of the room and along the side, with a total length of about forty feet.   Where it joined the side wall there was a door leading through it, and it was let into the wall and affixed in the same manner that the wall desks were fastened.   In addition to this, it was fastened to the floor at intervals by iron or steel braces, somewhat in the shape of an "L," extending for a couple of feet above the floor, and about a

foot on the floor, with a right angle at the point where the floor
and the bank counter met, and these braces were screwed or nailed
into the floor and into the counter. There were some six or eight
of these braces. In addition to this, on the front of the counter
there was a quarter round at the point where it rested upon the
floor, and this quarter round was at intervals nailed down, and on
the inside at various points where the supports of the desk rested
upon the floor nails were driven through the foot of these sup-
ports into the floor. During the year 1893 the Oklahoma National
Bank had financial troubles, and, for the purpose of executing a
mortgage upon this building, conveyed it to the Canadian Loan
and Trust Company, a subsidiary corporation, composed of the
stockholders of the bank. This deed described the property con-
veyed as follows: "Ninety (90) feet off the south of lot num-
bered one (1) in block numbered twenty-two (22), Oklahoma
City, according to the recorded plat thereof. To have and to
hold the same together with all and singular the tenements, here-
ditaments and appurtenances thereunto belonging, or in anywise
appertaining forever." The next conveyance in point of time was
a lease from the Canadian Loan and Trust Company to M. L.
Turner, wherein the property conveyed is described as follows:
"The banking room with rear private office on the corner of Main
and Broadway street, Oklahoma City, in the building known as the
Masonic Temple, together with the fireproof vault in connection
therewith, and the bank counters now in said room, to have and
to hold the same to the second party from the 31st day of De-
cember, 1898, to the 31st day of December, 1899." This lease
was renewed for two years from December 31, 1899, and again
renewed for a period of two years from and after December 31,
1901. On the 2nd day of June, 1900, the Canadian Loan and
Trust Company sold the lot in question to J. H. Everest, the de-
scription in that deed being as follows: "The south ninety (90)
feet off of lots one (1) and two (2) in block twenty-two (22) in
the townsite of Oklahoma City, in said Oklahoma county and
territory of Oklahoma, together with all improvements thereon

and all the appurtenances thereunto belonging or in any wise appertaining." It may be well to note that Gerson was a stockholder in the old Oklahoma National Bank, which made him also a stockholder in the Canadian Loan & Trust Company. He was also president of the Canadian Loan & Trust Company, and, while the deed from the Canadian Loan & Trust Company was made to Mr. Everest, it was made to him for the benefit of himself, Mr. Gerson, and Mr. Wheeler, both of whom were jointly interested with him in the purchase and the sale of the property. Mr. Everest thus acting for himself and Gerson and Wheeler, sold the property to Bates as trustee for Kelley, the landlord of the bank, the defendant therein. A description of the property contained in that contract is as follows: "The south ninety (90) feet of lots numbered one (1) and two (2) in block 22, in the townsite of Oklahoma City, together with all improvements thereon and all the appurtenances thereunto belonging or in any wise appertaining." This contract was subject to certain mortgages and leases—one to M. L. Turner covering the bank room now occupied by the Western National Bank, terminating on or before December 31, 1903. This contract was followed by a deed made by Mr. Everest on behalf of himself and Mr. Gerson and Wheeler, dated July 7, 1900, wherein the description of the property is as follows: "The south ninety (90) feet off of lots one and two in block twenty-two (22), being a tract of ground on the south end of said lots, sixty (60) feet east and west by ninety (90) feet north and south, in the city of Oklahoma City, according to the duly recorded plat of the townsite of Oklahoma City, together with all the improvements thereon and all the appurtenances thereunto belonging and warrant the title to the same."

On the 28th day of April, 1903, about three years after the Kelley purchase, and more than ten years after said property was placed in said building, Mr. Gerson took a bill of sale to the bank fixtures from the Oklahoma National Bank, which bill of sale is as follows:

"Oklahoma City, O. T., April 28, 1903. Know all men by

these presents: That we have this day sold to Harry L. Gerson, for a valuable consideration, all our right, title and interest in and to the bank furniture and fixtures now in the room occupied by the Western National Bank, at Oklahoma City, O. T., subject to a certain lease executed by the undersigned to the said Western National Bank of Oklahoma City. The said furniture including all counter work, 2 wall desks and 2 standing desks.

"THE OKLAHOMA NAT. BANK,

"By F. L. DOBBIN,

"Liquidating Agent."

Section 4023, Wilson's Oklahoma Statutes, provides that:

"A thing is deemed to be affixed to land when it is attached to it by roots, as in the case of trees, vines or shrubs, or imbedded in it, as in the case of walls, or permanently resting upon it, as in the case of buildings, or permanently attached to what is thus permanent, as by means of cement, plaster, nails, bolts or screws."

It is difficult to conceive a state of facts that will more accurately fit the definition of a fixture as defined by the latter part of the foregoing section than that agreed upon herein. The property involved here was attached to the realty by means of plaster, nails, bolts and screws at the time it was placed in the building wherein it remained to the present time. This fact, in the absence of anything to indicate a different intention, constitutes them fixtures within the meaning of section 4023, *supra*. We are unable to see how any question for a jury arises under the facts stated. The general rule seems to be that "articles not otherwise attached to realty than by their own weight are *prima facie* personalty, and articles affixed to land in fact, although only slightly, are *prima facie* realty, and that the burden of proof is upon the one contending that the former is realty or that the latter is personalty." 19 Cyc. 1036. Counsel for defendant in error admits that the manner in which the counter and wall desks were placed in the building is correctly described. If so, there was no issue of fact for the jury, as there is absolutely no evidence tending to show that it was ever the intention of any of the parties to make the character of the property anything except what it became by the

act of the original owner of the premises in attaching it to the building in a manner that, under the statute, makes it a fixture.

The judgment of the court below is reversed, with directions to set aside the judgment heretofore entered and enter one for the defendant.

All the Justices concur.