Argued July 18, reversed July 31, rehearing denied September 19, 1917.

## FIRST NAT. BANK *v.* HAZELWOOD CO.

### (166 Pac. 955.)

**Landlord and Tenant—Assignment of Lease—Effect.**

1.   The liability of the assignee of the lessee arises out of privity of estate, and not of contract, and is confined to such covenants in the lease as run with the land.

**Covenants—Running With Land.**

2.   Only real covenants run with the land.

> [As to what are covenants that run with the land, see note in 56 Am. Rep. 151.]

**Landlord and Tenant—Assignment of Lease—Effect.**

3.   Under a lease of a creamery with which the parties attempted to include certain milk routes, covenants to keep up the milk routes did not run with the land and did not bind the assignee of the lessee.

**Landlord and Tenant—Assignment of Lease—Effect.**

4.   A covenant that the lessee would operate the leased creamery plant as an independent creamery concerns the use to be made of the premises and runs with the land.

**Landlord and Tenant—Assignment of Lease—Breach of Covenant— Damages.**

5.   Where the lessee of a creamery covenanted to keep up cream routes and to operate the premises as an independent creamery and damages by diminishing rental value of the premises were alleged due to his failure to operate as an independent creamery, but the witnesses ascribed the damage to the loss of the cream routes, the lessor could not recover from the lessee's assignee.

**Landlord and Tenant—Injury to Property—Liability.**

6.   Where the lessee's assignee had possession of personalty connected with the premises, he was liable to account for it as bailee, or for its value when lost or converted.

**Landlord and Tenant—Personalty Connected With Premises—Loss— Damage—Evidence.**

·  7.   Where a lessee's assignee had possession of personalty connected with the leased premises and the same was lost, the value of the property at the inception of the lease was relevant in fixing the damage, which was the value of the property when lost.

From Multnomah: Henry R. McGinn, Judge.

Department 2. Statement by MR. JUSTICE MC-CAMANT.

This is an action brought by the First National Bank of Albany against Klock Produce Company and Hazelwood Company. Klock Produce Company was not served and the controversy is wholly between plaintiff and the defendant Hazelwood Company. The complaint consists of two counts. In both counts plaintiff alleges the incorporation of the parties, plaintiff's ownership of certain real property at Albany and the lease of this property to Klock Produce Company February 28, 1912. It is alleged in both counts that a creamery building stood on the property and that the lease covered the personal property of plaintiff in the creamery. The lease ran for three years, expiring March 1, 1915. It is alleged that Klock Produce Company sold its right, title and interest in the lease to Hazelwood Company and that Hazelwood Company remained in the occupation of the premises till the expiration of the lease. Plaintiff avers that "Hazelwood Company assumed all the duties, liabilities, conditions and provisions contained in the aforesaid agreement of lease."

The first count in the complaint alleges that on the making of the lease plaintiff turned over to the lessee certain personal property; that "Hazelwood Company, as successors of the defendant Klock Produce Company continued in * * the use of said described personal property until the expiration of the aforesaid lease." It is then alleged that said defendant failed to return, replace or otherwise account for certain personal property specifically listed, and damages in the sum of $415.75 are claimed by reason of this default. It is alleged that the lease provided that the lessee agreed to take good care of the personal prop-

erty and at the expiration of the lease to turn it over to the lessor in as good condition as at the commencement of the lease, reasonable use and wear thereof excepted; the lessee to replace all of the personalty lost or destroyed.

The second count set up that the lease covered certain milk routes serving the creamery and appurtenant thereto; that the lease provided that the lessee "would operate said creamery as an independent creamery and that both parties to said lease would do their utmost to retain said milk routes and that at the expiration of said lease" the lessee "would turn over" to the lessor "said milk routes." It is alleged that the defendants violated the lease in that the creamery was not operated as an independent creamery, but in conjunction with other creameries; also that "the defendants did not do their utmost to retain said milk routes for the benefit of said creamery," and that "defendants failed and neglected to turn over said milk routes to the plaintiff" at the expiration of the lease. The complaint charges that defendants induced and forced persons supplying milk and cream to said milk routes to ship to Portland and to other creameries, and that defendants converted these milk routes to their own use after the expiration of the lease. It is alleged that these acts of the defendants destroyed the business of the creamery to plaintiff's damage in the sum of $5,000.

The answer admits the incorporation of the parties, plaintiff's ownership of the property, the execution, but not the contents, of the lease and the occupation of the premises by Hazelwood Company, from the summer of 1912 till March 1, 1915; the other allegations are denied.

Plaintiff recovered a verdict of $300 on its first count and $2,500 on its second count. Judgment was entered accordingly and defendant Hazelwood Company appeals.       Affirmed.   First Count.
Reversed.   Second Count.

For appellant there was a brief and an oral argument by *Mr. Maurice W. Seitz.*

For respondent there was a brief over the names of *Messrs. Schmitt & Schmitt* and *Messrs. Hewitt & Sox,* with oral arguments by *Mr. G. G. Schmitt* and *Mr. H. H. Hewitt.*

Mr. Justice McCamant delivered the opinion of the court.

Appellant assigns error on the denial of its motion for a nonsuit as to the second cause of action set up in the complaint. The portions of the lease material to the consideration of this question are the following:

The lessee "agrees that he will, during the term of this lease, operate said creamery plant as an independent creamery; that he will take good care of the property delivered to him under this lease, and that he will at the expiration of this lease, turn over the said leased property to the party of first part in as good condition as the same is found at the commencement of this lease, reasonable use and wear thereof and damage by the elements excepted, and without any notice to quit, the party of the second part agreeing to replace all of the above described personal property lost or destroyed by the fault of him or his agents or employees.

"It is further understood and agreed, by and between the parties hereto, that the cream routes now serving said creamery, shall be considered a part of said demised property, as far as may be, and that both parties to this lease will do their utmost to retain

said routes for the benefit of said Creamery, and that at the expiration of said lease all of the cream routes connected with the Creamery Plant shall be turned over to the party of the first part, with the remainder of said creamery plant."

Plaintiff offered no evidence in support of its allegations that Hazelwood Company expressly assumed these covenants of the lease. The liability of Hazelwood Company, if any, must be based on the admitted fact that it occupied the demised premises from June 1, 1912, till the expiration of the lease, and on these admissions of its counsel found in the record:

"We bought out the Klock Produce Company, certain of its assets, and we knew they had a lease on the premises, but we never saw the lease, and we simply went into possession. We just went into possession. * * I am willing to concede right here that we went in there as assignees, and these other men walked out. I am willing to concede that fact."

Counsel for appellant earnestly contends that these circumstances are insufficient to charge appellant with the duty of fulfilling the above covenants in the lease.

It is said in 1 McAdam on Landlord and Tenant, page 864, that:

"Where a person other than the lessee is shown to be in possession of leased premises, paying rent therefor, the law will presume that the lease has been assigned to him."

This principle is supported by 16 R. C. L., page 863; *Carter* v. *Hammett,* 12 Barb. (N. Y.) 253, 262; *Baker* v. *J. Maier etc. Brewery,* 140 Cal. 530, 534 (74 Pac. 22); *Moline* v. *Portland Brewing Co.,* 73 Or. 532, 537 (144 Pac. 572).

It does not follow that the party so in possession is liable under all of the lessee's covenants. The rule is thus stated in 1 McAdam, page 863:

"The assignee is only liable for covenants running with the land which are broken while he is the legal assignee."

On page 875 of this work it is said that:

"An assignee is only liable for his own breaches of express or implied covenants in the lease which run with the land, so long as he retains possession by himself or his tenants."

We quote further from this author, page 864:

"So, for a covenant not running with the land, no action of covenant will lie against an assignee."

On page 890 we find:

"An assignee is not liable on a covenant that relates to something not in being at the time of the demise, or merely personal or collateral to the thing demised; as to pay a sum of money in gross, to build *de novo,* or the like, for it does not run with the land, and therefore assignees are not bound even though they be expressly named."

On page 417 McAdam says:

"A word or two will be here added as to personal covenants.

"Where a lease of land also embraces personal chattels, the lessee's covenant to return or replace, or pay for them at the end of the term does not pass to the grantee of the reversion."

In Gear on Landlord and Tenant, Section 125, it is said that:

"Third parties in possession and control of the premises are presumed to be liable for rent as assignees of the lease.

"Mere possession and claim of an assignment will not make the possessor liable on the covenants of the lease."

In 2 Underhill on Landlord and Tenant, Section 642, the rule is stated thus:

"After the acceptance of the lease by the assignee he will be liable to the lessor by reason of this privity of estate for all breaches of covenants which run with the land occurring during his occupation of the premises.

"But the assignee of a lease is not liable to the lessor for the breach of a covenant which does not run with the land unless he is expressly named in the lease."

The above rules are announced by all of the text-writers:

"An assignee of a term is not bound by the personal covenants of the lessee. But he is bound to perform all the covenants which 'run with the land,' and that without being named by the special word 'assigns' '': Woodfall's Landlord and Tenant, 295.

"In order that the assignee may be liable on the covenants in a lease, the covenants must therefore run with the land; must be connected with, be attached to, or inhere in the land": Jones on Landlord and Tenant, § 328.

"An assignee is personally liable to the lessor upon all covenants which run with the land": Taylor on Landlord and Tenant, § 109.

In 24 Cyc. 980, 982, it is said:

"The right to the benefits of covenants of the lessor, running with the land, passes to the assignee upon assignment of the lease and he is correspondingly bound thereby, after acceptance of the leasehold estate. * *

"The assignee is not bound at law by personal covenants of the lessee."

In 16 R. C. L., page 849, the rule is thus stated:

"An assignee of the leasehold is in privity of estate with the lessor and is liable to him personally for the breach of the lessee's covenants which are annexed to and run with the leasehold and which are broken while he holds the leasehold estate. * * The assignee

is not bound by collateral or personal covenants of the lessee.''

The principle announced by these authorities is supported by so many adjudicated cases that it is superfluous to cite them. *Masury* v. *Southworth,* 9 Ohio St. 340, 347, is a leading case; we quote from the opinion:

''It may be, that the lessee would be liable on the covenant, but not the assignee of the lessee. There is a manifest difference between assigning a right of action, and creating, by assignment, a liability to an action. The latter must, generally, assume the shape of a contract to indemnify, and could not usually affect the rights of the party holding the original claim. It would be really a new contract, and not in the nature of an assignment of another contract. In this view of the liability of an assignee of the lease to the assignee of the reversion, the principle governing the assignment of a chose in action, or the benefit of a covenant, must be thrown out of view, and the inquiry be made on other principles and considerations.

''The covenant must run with the land—must be so connected with, be attached to, and inhere in the land, that the assignee of the reversion or the assignee of the lease, as the case may be, would have a right to the advantage of it, or be bound to perform it. Such is the general principle; but whether a covenant so runs with the land, must depend, in the first place, upon the nature and character of the particular covenant and of the estate demised, as connected with the respective rights of lessor and lessee in reference to the subject matter of the covenant; and, in the next place, upon the intent of the parties in the creation of the estate, as shown by the language of the instrument creating it, construed with reference to the relative position of the parties, and to the subject matter to which their contract and conveyance is to be applied. The nature and character of the covenant may be such that it may run with the land; and yet, if it be clearly

the agreement of the parties that it shall not so run, it would not be annexed, in despite of the agreement so expressed.   And, on the contrary, however clearly and strongly expressed may be the intent and agreement of the parties, that the covenant shall run with the land, yet, if it be of such a character that the law does not permit it to be attached, it cannot be attached by the agreement of the parties, and the assignee would take the estate clear of any such covenant.''

1. Plaintiff cites *Moline* v. *Portland Brewing Co.*, 73 Or. 532 (144 Pac. 572).   In this case it is said:

"The assignee of a lease is bound to fulfill the obligations thereof according to the terms of the lease.''

This language is to be interpreted in the light of the facts involved in that case.   The action was one brought to recover the stipulated rent from a party who had accepted a written assignment of the lease from the lessee.   The covenant to pay rent runs with the land and binds the lessee's assignee.   The above language as applied to the controversy involved in that case is therefore accurate.   The court was dealing with the obligations arising from the written assignment of a lease duly accepted by the assignee; in this case we are dealing with the presumptions of law arising from the occupation of the demised premises by a successor to the business of the lessee.   The case of *Moline* v. *Portland Brewing Company* does not therefore conflict with the principles of the law of landlord and tenant announced by the above text-writers.   Whatever liability was assumed by appellant grew out of privity of estate rather than privity of contract.   It is confined to such covenants in the lease as run with the land.

It remains to apply these principles to the facts alleged and proved in the instant case.   Plaintiff's

damage is predicated chiefly on the breach of the following covenant in the lease:

"It is further understood and agreed * * that both parties to this lease will do their utmost to retain said routes for the benefit of said Creamery, and that at the expiration of said lease all of the cream routes connected with the Creamery Plant shall be turned over to the party of the first part, with the remainder of said creamery plant."

The cream routes were circuits extending from and to Albany, as much as fifteen miles in extent, on which wagons from the creamery collected milk and cream for its use. There is no evidence that at the time when the lease was made plaintiff had any contracts with farmers under which the latter were obligated to sell their milk and cream to plaintiff or to its lessee. Plaintiff therefore had no property right which it could assign. The evidence does show that a plentiful supply of milk and cream was important to the prosperity of the business operated on the demised premises, and it tends to show that this supply could not be secured without the operation of milk routes. The evidence on behalf of plaintiff shows that farmers on the routes in question, at the inception of the lease, received one cent less per pound of butterfat for the milk and cream taken up on their farms than they received for these products delivered at the creamery in Albany; that appellant increased this differential successively to two cents and three cents; that the competing creamery continued to charge a differential of one cent; that the farmers were dissatisfied and inclined to deal with appellant's competitor, and that one of the employees of appellant, operating these milk routes, took the business on these routes to the competing creamery. Appellant

contends that the expense of collecting milk and cream always exceeded the differential charged by it and cogent testimony was offered to sustain this contention.   The record contains some evidence to the contrary.   Appellant's witnesses testify that the raise in the price for collection, hereinabove referred to, was due to increasing cost of collection as the season advanced, the milk supply fell off and the roads became more difficult to travel over.   There is some evidence on behalf of plaintiff that appellant endeavored to divert the milk and cream on these routes to its plant in Portland.

If the above covenants were binding on appellant, there was evidence sufficient to take the case to the jury.   If these covenants did not bind appellant, it was within its rights in doing the acts testified to.

2. It is elementary that only real covenants run with the land: *Mitchell* v. *Warner,* 5 Conn. 497, 503.   It is said in 7 R. C. L., page 1099, that:

"It is an essential quality of a real covenant that it relates to the realty, having for its object something annexed to or inherent in or connected with land or other real property."

In 2 Greenleaf's Cruise on Real Property, 751, real covenants are thus defined:

"*Covenants real* are those which have for their object something annexed to, or inherent in, or connected with land, or other real property."

In *Morse* v. *Garner,* 1 Strob. L. (S. C.) 514 (47 Am. Dec. 565), a partition agreement allotted to certain grantees a ferry tract and provided that these grantees should be entitled to free ferriage so long as they owned the land.   It was held that this agreement did not run with the land and could not be enforced by their successor in interest.   The court said:

"It appears to be an essential quality of a real covenant that it relate to the realty, having for its object something annexed to, or inherent in, or connected with land or other real property; and that a personal covenant does not bind the assignee of a covenantor, even though expressly named, but charges only the executor or administrator; and that it makes no difference if such personal covenant is connected with real covenants, so as to form one entire consideration.

"A right of ferry is not then an incorporeal hereditament, nor the subject of a real covenant; and a contract, though under seal, that one should pass, toll free, is a personal contract which does not bind an assignee of the ferry."

3. Within the rules announced in these authorities the covenants with respect to the cream routes did not run with the land, nor did Hazelwood Company become bound by them. Plaintiff's remedy with reference to this part of the contract is confined to Klock Produce Company.

It is true that these routes were intimately connected with the business operated on the demised premises and that these premises were useful only for the conduct of such business. Plaintiff is entitled on this record to the conclusion that the leased property has little rental value in the absence of a creamery business conducted therein and that such a business cannot be conducted without cream routes. The cream routes, nevertheless, are not attached to real property. The covenants with reference to them are collateral to the real covenants contained in the lease. They are to be distinguished from those covenants whereby an owner of land charges it with a servitude in favor of demised premises in the hands of his lessee: *Norman* v. *Wells*, 17 Wend. (N. Y.) 136. Plaintiff had no property right in these cream routes; they were not incorporeal hereditaments. The covenants with reference to them

were not real, but personal covenants binding only upon the parties to the lease.

We do not overlook the provision in the lease which makes the personal property, and undertakes to make the cream routes, a part of the demised premises. In *Spencer's Case,* 1 Smith's Leading Cases, 137, 138, it is said:

"It was resolved, if a man leases sheep or other stock of cattle, or any other personal goods for any time, and the lessee covenants for him and his assigns at the end of the time to deliver the like cattle or goods as good as the things letten were, or such price for them; and the lessee assigns the sheep over, this covenant shall not bind the assignee, for it is but a personal contract, and wants such privity as is between the lessor and lessee and his assigns of the land in respect of the reversion. But in the case of a lease of personal goods there is not any privity, nor any reversion, but merely a thing in action in the personalty, which cannot bind any but the covenantor, his executors or administrators, who represent him. The same law, if a man demise a house and land for years, with a stock or sum of money, rendering rent, and the lessee covenants for him, his executors, administrators, and assigns, to deliver the stock or sum of money at the end of the term, yet the assignee shall not be charged with this covenant; for although the rent reserved was increased in respect of the stock or sum, yet the rent did not issue out of the stock or sum, but out of the land only; and therefore as to the stock or sum the covenant is personal, and shall bind the covenantor, his executors and administrators, and not his assignee."

In *Allen* v. *Culver,* 3 Denio (N. Y.), 284, 295, the lease provided that certain tools and chalkstones were to be part of the property leased. The lessee covenanted that this personal property should remain on the premises at the expiration of the lease and that in default thereof it should be replaced by the lessee.

This was held to be a personal covenant. The court said:

"Unless the covenant, in relation to the *tools* and *chalkstones,* is one which runs with the estate in the land, the action for the breach of it cannot be sustained in the name of the plaintiffs, but must be brought by the lessors in whom the legal interest in the contract is vested.

"Although the parties agreed that the tools and chalkstones mentioned in the covenant, should be considered as part of the premises demised, and should pass therewith, they are nevertheless mere personal chattels, out of which the rent could not issue. It is true, that the yearly value of the demised premises may have been increased by the letting of these articles of personal property; still the rent reserved continues to issue out of the land alone."

See also *Brewer* v. *Marshall,* 19 N. J. Eq. 537 (97 Am. Dec. 679).

It is very doubtful if the courts could in any event enforce so much of the contract as provides "that both parties to this lease will do their utmost to retain said routes for the benefit of said creamery." An agreement closely akin to this was held void for indefiniteness by the Washington Supreme Court: *Barton* v. *Spinning,* 8 Wash. 458, 459, 460 (36 Pac. 439). Under the principles announced by this court in *Gaines* v. *Vandecar,* 59 Or. 187, 192–194 (115 Pac. 721, 1122), and under the rule stated in 6 R. C. L., page 644, it is difficult to uphold this stipulation as binding anyone to anything.

4, 5. The covenant that the lessee would "operate said creamery plant as an independent creamery," concerns the use to be made of the demised premises and such covenants run with the land: *Duester* v. *Alvin,* 74 Or. 544 (145 Pac. 660); *St. Andrew's Lutheran Church's Appeal,* 67 Pa. St. 512; *Crowe* v. *Riley,* 63 Ohio St. 1

(57 N. E. 956).   The agreement of the parties contemplated that the creamery should be independently operated throughout the term of the lease and not for a part of the term only, as contended by appellant. Plaintiff's proof is that appellant ceased churning while it was in possession of the plant and thereafter used the premises as a receiving station for milk and cream delivered by the farmers.   We find no evidence of damage by appellant's violation of this covenant to operate as an independent creamery.   Plaintiff's proof of damage is to the effect that the rental value of the demised premises has been diminished, but the witnesses charge this damage to the loss of the milk routes.   We think, therefore, that the court erred in denying appellant's motion for a nonsuit as to the second count in the complaint.

6, 7. As to the first count in the complaint, we think that plaintiff proved a case sufficient to go to the jury. Appellant was not bound by the covenants in the lease with reference to the personal property, but the complaint sufficiently charges that appellant had the use of this personalty while it was in possession of the creamery.   It was therefore liable to account for it as bailee.   The jury was instructed by the lower court to charge appellant with only the value of so much of the personalty as had been lost through appellant's fault.   It is true that the measure of plaintiff's damage on this branch of the case is the value of the personal property when lost, broken or converted: 8 R. C. L., p. 483.   But the value of the personalty at the inception of the lease was relevant to this inquiry: *Maxson* v. *Ashland Iron Works, ante,* p. 345 (166 Pac. 37).   Appellant was permitted to offer evidence bearing on the breakage and depreciation of this character of personalty.

There is evidence that a portion, at least, of the missing personal property came into the possession of appellant. The appraisal of this property was for the jury and we cannot say that its verdict in this regard is unsupported by evidence.

So much of the judgment as is based on the first cause of action is affirmed; so much of the judgment as is based on the second cause of action is reversed, with instructions to enter judgment of nonsuit.

AFFIRMED.   FIRST   COUNT.<br>REVERSED.   SECOND   COUNT.

MR. CHIEF JUSTICE MCBRIDE, MR. JUSTICE MOORE and MR. JUSTICE BEAN concur.

---

Denied September 11, 1917.

PETITION FOR REHEARING.

(166 Pac. 000.)

On petition for rehearing.   Rehearing denied.

*Messrs. Schmitt & Schmitt* and *Messrs. Hewitt & Sox,* for the petition.

*Mr. Maurice W. Seitz, contra.*

Department 2. MR. JUSTICE MCCAMANT delivered the opinion of the court.

Plaintiff contends in a petition for rehearing that the duty to maintain the cream routes was incidental to the operation of the plant as an independent creamery and that therefore appellant was obligated to maintain and return the cream routes. In our opinion the lease is not open to this construction. If the obligations of the lessee with reference to the cream routes

were included in the covenant to operate as an independent creamery, why mention the cream routes? The only covenants in the lease which can be properly denominated real covenants are those which relate to the use of the demised premises; the other obligations of the lessee, whether expressed in the lease or inferable therefrom, are collateral and personal.    There is no escape from the conclusion that plaintiff's remedy as to these latter covenants is confined to the original lessee. We do not hold that plaintiff has no remedy for the acts complained of with reference to the cream routes, but only that it has no remedy against this appellant.

The petition also challenges the correctness of our conclusion that the evidence fails to show any damage traceable to the failure of appellant to operate the plant as an independent creamery.    We have reread the testimony and are satisfied that our former conclusions are correct.    The evidence shows that the premises are useful chiefly for creamery purposes and that their rental value is materially less than at the inception of the lease.    Only two causes are assigned by the witnesses for this diminution in productiveness. One of these is the destruction of the business by the loss of the cream routes and the other, the competition of two other creameries in Albany, making it impossible to conduct successfully a third creamery in that city.    No witness testifies that this decline in rental value is chargeable in whole or in part to the failure of appellant to operate the plant as an independent creamery.

The petition for a rehearing is denied.

REHEARING DENIED.<br>MOTION TO RETAX COSTS DENIED.

MR. CHIEF JUSTICE McBRIDE, MR. JUSTICE MOORE and MR. JUSTICE BEAN concur.