### KLAYMAN v. PUTTER et al.

No. 23980.   March 26, 1935.

Silverman, Rosenstein & Fist and R. E. Rosenstein, for plaintiff in error.

Mills, Cohen & Taylor, for defendants in error.

PER CURIAM. The parties will be referred to as they appeared in the trial court.

The plaintiffs leased a store building to three persons for one year under a written contract. In paragraph 3 of the contract it was provided that the lessees would "keep and maintain all portions of the building let to him by the terms of this contract in as good state of repair as the same are turned over to him, natural tear and wear alone excepted." In paragraph 9 of the contract it is provided that:

"Said tenants shall further have the use and benefit of and occupancy of all of the store fixtures now within the said store room and agree to keep and maintain and surrender the same at the end of this lease, or its termination for any cause, in as good condition as received, usual wear and tear alone excepted."

In paragraph 12 it is provided that:

"The tenants further agree that after the expiration of the time given in the lease, to wit, the 6th day of April, 1931, without notice from the landlords, to give possession of said portion of building to said party of the first part, the landlords, or upon its renewal, if renewed. The destruction of said building on said premises by fire to work a termination of this lease."

The lessees held the premises for about nine months, conducting a mercantile business, and then sold all of the stock of goods to defendant, who took over the lease and occupied the building to the end of the term, running the same business in it that was conducted by lessees. The lessees during their occupancy made changes in the building for the convenience of the business, taking out part of the fixtures that were attached to the building and making an opening in a partition wall between the two rooms of the building. At the time the defendant was taking over the property, plaintiffs notified him of these changes and the damages to the property, and that "he should not pay him over the money." He also had telegrams sent to the defendant at St. Louis, where the defendant lived, and to Tulsa, notifying him of the damages, and that they expected him to make good the damages or pay rent from that time on. No proof was made of the delivery of these telegrams, except from the fact that they were not returned, and defendant denied receiving them. The defendant occupied the premises to the end of the term, and then surrendered them to the plaintiffs without replacing the fixtures and leaving the opening in the wall. The plaintiffs secured a verdict and judgment for the damages to the premises, from which this appeal was taken.

The first contention of the defendant is that the covenant in paragraph 3 of the lease, requiring the lessees to keep and maintain the building in repair, was breached at the time the opening was made in the wall by lessees, and no assumption of that liability being undertaken by the defendant, he was not liable for that breach. The second contention of the defendant is that the covenant to keep and maintain the building in repair covered everything that was part of the building, and so the covenant concerning the fixtures was personal, binding only on the lessee. The plaintiffs contend that both covenants, 3 and 9, run with the land and are binding on the assignee of the lease for the damages to the property, when it was surrendered to the landlords.

Counsel for neither of the parties have cited any decision from the courts of this state in which the questions involved in this appeal have been considered, and we have found none. Text-writers and the courts of other states have given the question of the liability of an assignee of a lease to the lessor consideration, and there is some conflict between them as to the rules that should govern such liability. The weight of authority supports the rule that an assignee of a lease is liable to the lessor for breach of a covenant running with the land which occurs while such assignee holds the leasehold estate, and he is not liable for a

breach of such covenants made before he became such holder, nor for a breach of merely personal covenants. It is not in the statement of these rules that the courts and text-writers disagree, but in the application of them to varying facts under different covenants. The principles underlying these rules control the decision in any case, rather than the formal statement of the rules themselves. 36 C. J. 199, sec. 863; 16 R. C. L. 849, sec. 349; 1 Wood's Landlord and Tenant (2d Ed.) 666, sec. 304; Note to 42 A. L. R., 1174; 16 R. C. L., 849, sec. 349; Id., 850, sec. 351; First National Bank v. Hazlewood Co. (Ore.) 166 P. 955; Boardman v. Howard (Minn.) 64 L. R. A. 648; Spafford v. Meagley, 1 Ohio Dec. Reprint, 364; Pollard v. Shaaffer, I L. Ed. (U. S.) 104.

The provision in paragraph 3 of the lease, providing that the lessees shall "maintain all portions of the building let to him by the terms of this contract in as good state of repair as the same are turned over to him, natural tear and wear alone excepted," united with paragraph 12, binding them to return the premises at the end of the term to plaintiffs, carries the necessary meaning that the building will be returned to the plaintiffs in the condition which the contract requires that it be kept, that is, "in as good state of repair as the same are turned over to him, natural tear and wear alone excepted," with the added exception in paragraph 12 that destruction by fire would terminate the lease. This amounts to an express covenant to restore the premises at the end of the term in same condition as they were when received, with these stated exceptions; since, if the property is kept in repair, it will be in repair when returned.

Covenants to keep in repair and to restore in repair are separable, and they constitute two covenants each capable of a breach, although joined together in the same paragraph of the lease. In this case the covenant to maintain in repair was breached at the time the changes were made by the lessees in the building, and for making these changes the lessees alone were liable. A breach of the covenant to return the premises in repair could not be made until the time at which the premises were restored, and for that breach the tenant at the end of the term would be liable. This rule of construction is laid down in section 611, page 1094, 16 R. C. L., in the following language:

"A covenant to repair and to leave in repair are generally treated as independent covenants, and the landlord may maintain an action for want of repair before the end of the term. And a judgment for damages for the breach of a continuing covenant to repair does not bar a subsequent action for damages sustained by neglect to repair continued after the period covered by the prior recovery."

And in 36 C. J., page 202, it is said:

"A recovery of damages for breach of covenant to repair is not estoppel to a recovery of damages for failure to leave the premises in repair, due allowance being made for the sum previously recovered."

The covenant to leave in repair, express or implied, runs with the land, and it is equally binding upon an assignee as upon the lessee. One who takes an assignment of a lease must take notice of the terms of the lease and of the law applicable to such use of another's property. No one may justly take the benefits of a contract and repudiate its obligations. An assignee of a lease must also take notice at his peril of the conditions of the premises when leased, and of the law requiring it to be restored in substantially the same conditions. In the case of Pollard v. Shaaffer, 1 L. Ed. (U. S.) 104, the court says:

"A covenant to repair and to deliver up the demised premises in good order and repair, runs with the land and binds the assignee, although he were not named by express words."

The same rule is stated in 24 Cyc. 1112, as follows:

"A covenant on the part of the tenant to surrender the premises at the expiration of the term in as good condition as when received, or to surrender certain personal property on the premises at the end of the term, is binding on the tenant's assignee, and inures to the benefit of the assignee of the reversion."

Whether or not a covenant to return personal property in a leased building in as good condition as when received would be binding on the assignee in this case need not be determined, since in his instructions to the jury the court excluded from the jury's consideration all personal property not affixed to the building.

In this case the covenant to keep in repair was breached by the lessees at the time they made the changes in the building shown in the evidence. No liability for that breach was assumed by the assignee,

the defendant, by merely taking over the lease. The plaintiffs might have maintained an action on the covenant to keep in repair against the lessees; but they were not bound to pursue this remedy, since they had the right, if they chose, to rely upon the other covenant, to restore the property in as good condition as it was when the lease was executed. In 16 R. C. L., page 790, sec. 284, it is said:

"The weight of authority undoubtedly is in favor of the doctrine that no action lies for a breach of a covenant to leave in good condition or the like until the expiration of the tenancy. The reason for this rule is apparent, for though the tenant, during the term, suffers the premises to become in bad condition, he has during the term a locus penitentiae to put the premises in the required condition, and it cannot be said, because of their condition at any time during the term, that they will not be left in proper condition at the end of the term."

There is a clear distinction between alterations of the leased premises which may be restored by the lessee or his assignee before the end of the term, and such alterations which are in their nature permanent and cannot be remedied, such as cutting growing timber from the leased premises. In the latter class of cases, we are not here concerned, since it was clearly shown in the evidence of this case that the alterations could easily have been restored to their original condition without permanent detriment to the property. Such alterations, which may be so restored, by the more recent authorities and by the better reasoning, are violations of the covenant to keep in repair, and if allowed to remain to the end of the term, they are a breach of the covenant to restore the premises in proper condition. For it is clear that, if such alterations are eliminated before the end of the term and the property is left in as good condition as it was at the time of the lease, the owner of the reversion would have no cause to complain. The converse of the proposition is equally obvious. See 16 R. C. L., page 733, section 225; 24 Cyc. 1094; Wotten v. Wise, 47 N. Y. Super. Ct. 515.

The second contention of the defendant cannot be sustained. Contracts are construed to effect the intention of the parties, and it cannot be assumed that they intended to abrogate one paragraph of a lease by another. Whether paragraph 9 of the lease was a covenant running with the land or a personal covenant binding only on the lessees must be determined by the language

used and the law defining this language. Section 11724, O. S. 1931, provides:

"Fixtures Defined. A thing is deemed to be affixed to land when it is attached to it by roots, as in the case of trees, vines and shrubs; or imbedded in it, as in the case of walls, * * * or permanently attached to what is thus permanent, as by means of cement, plaster, nails, bolts, or screws."

Since the statute of this state specifically defines fixtures, making them part of the real estate, it must be assumed that the parties used the word in its legal sense. Being a part of the real estate, it follows that covenants relating to keeping and to returning them in repair were covenants running with the land, binding on the assignee of the lease, and that the covenant to return the fixtures in repair was breached at the time the property was restored to plaintiffs with such fixtures damaged.

Complaints are made by defendant of the instructions of the court, most of which need not be discussed, since the instructions to the jury in this case were, in the main, according to views herein expressed. In one of these instructions the court left it to the jury to determine whether the covenant relating to the fixtures was one running with the land, and this is assigned as error. Where the facts are undisputed or admitted, the question of what covenants run with the land is one for the court. Western National Bank v. Gerson, 27 Okla. 280, 117 P. 205. But in this case the evidence showed that some parts of the equipment of the store building were attached to the walls and floors, constituting them fixtures, and some parts were not so attached. Just what parts were attached to the building and what parts were not so attached was a question of fact for the jury. The court instructed the jury that, if the equipment was attached to the building in the ways provided by statute, such parts of the equipment so attached would be fixtures and part of the real estate, and in such case the covenant concerning the fixtures so attached would run with the land and be binding on the defendant. Taking the whole of the instructions and construing them together, the law expressed in them was properly given to the jury, and no error was committed by the court in giving them.

The judgment is affirmed.

The Supreme Court acknowledges the aid of Attorneys D. W. Tracy, E. H. Gipson, and

W. R. Wise in the preparation of this opinion. These attorneys constituted an advisory committee selected by the State Bar, appointed by the Judicial Council, and approved by the Supreme Court. After the analysis of the law and facts was prepared by Mr. Tracy and approved by Mr. Gipson, the cause was assigned to a Justice of this court for examination and report to the court. Thereafter, upon consideration by a majority of the court, this opinion, as modified, was adopted. Mr. Wise concurs in part and dissents in part.

McNEILL, C. J., and RILEY, BUSBY, PHELPS, and GIBSON, JJ., concur.