Argued March 31, affirmed April 29, 1953

# THE TEXAS COMPANY *v.* BUTLER ET AL.

256 P. 2d 259

*Richard D. Sanders,* of Pittsburg, California, argued the cause for appellants. With him on the brief were Marsh, Marsh & Dashney, of McMinnville.

*Arthur S. Vosburg,* of Portland, argued the cause for respondent. On the brief were Flegel, Vosburg, Joss & Hedlund, of Portland.

Before LATOURETTE, Chief Justice, and ROSSMAN, LUSK, TOOZE and PERRY, Justices.

PERRY, J.

This is a suit for specific performance, brought by the plaintiff against the defendants. The plaintiff prevailed and the defendants appeal.

The facts in this case are that plaintiff, on June 10, 1940, entered into contract with Herbert T. Hacker and his wife, Henrietta M. Hacker, whereby it leased from the Hackers for a monthly cash rental certain real premises situated in the city of Astoria, Clatsop county, Oregon, upon which the lessor agreed to construct a building, for a period of ten years, commencing on September 1, 1940, which lease contained an option to purchase, in words and figures as follows:

"Option. Lessor hereby gives the lessee the right and option to purchase the demised premises and all structures and improvements thereon at any time during the term of this lease or any extension or renewal thereof for the sum of Fifteen Thousand No/100 Dollars ($15,000.00).

"In event a part of the premises herein demised is condemned, the amount of damages awarded to the lessor in consequence thereof shall be deducted from the purchase price upon exercise of this option by the lessee.

"Lessee's notice of election to purchase shall be sufficient if deposited in the mail addressed to

lessor at or before midnight of the day on which option term expires. Lessor agrees upon receipt of such notice, (a) to deposit in escrow with such bank or title company as may be designated by lessee, a good and sufficient warranty deed conveying the premises to lessee, free of encumbrances, (b) to authorize such escrow holder to deliver said deed to lessee whenever lessee shall pay said price to said escrow holder and make the same subject to the order of lessor, and (c) to authorize said escrow holder to order the title report and title insurance policy or guaranty hereinafter referred to and pay the cost thereof and charge same to lessor. Lessee agrees upon receipt of notice that such deed has been deposited, to deposit said price with said escrow holder with instructions to accept said deed and immediately upon acceptance to record the same and pay said price to lessor, but only upon condition that a responsible title company shall first have given its assurance that after such recording it will on demand, issue a title insurance policy in an amount equal to the said purchase price or a certificate of title guarantee with liability limited to that amount, showing title to said premises vested in lessee free of encumbrances; provided, however, that if said premises are situated in a county where title insurance or title certificates are not customary, lessor may in lieu of such title report and policy or certificate, furnish lessee with full and complete abstracts of title to said premises, certified by a reputable searcher, as soon as possible after notice of the exercise of said option; and lessee agrees to cause the same to be examined by its attorney and to cause a report of such examination to be made to said escrow holder, and in that event lessee when depositing said money, will authorize said escrow holder to pay the same to lessor whenever it receives the report of such attorney stating that title is free and clear. If said title shall prove defective and such defects are not corrected or removed within ninety (90) days from the date when the escrow holder is noti-

fied of such defects, lessee at its option may withdraw the money deposited by it, in which event the said deed shall be returned to lessor. Rentals shall cease as of the date of deposit of said price in escrow and taxes shall be prorated as of the same date.

"*  *  *  *  *

"Successors and Assigns. This agreement shall be binding upon and shall enure to the benefit of the parties hereto and their respective successors or assigns."

Subsequent to the making of the lease and during the occupation of the premises by the lessee, the lessors, Herbert T. Hacker and wife, conveyed the property to the defendants John A. Butler and Therese K. Butler.

On March 20, 1946, defendants John A. Butler and Therese K. Butler, retaining a life estate in the property, conveyed the remainder to their daughter, the defendant Bonnie A. Sanders, nee Bonnie A. Butler.

The plaintiff was duly notified of the conveyance of the property from the Hackers to John A. Butler and Therese K. Butler, and from and after March 6, 1942, paid the monthly rental to the Butlers.

Plaintiff, on August 29, 1950, by written notice, notified the defendants John A. Butler and wife of the plaintiff's election to purchase the said property in accordance with the terms of the option provided in the lease agreement, designated the escrow holder and deposited the $15,000 to be paid for the purchase of the property.

■ The lease entered into between Herbert T. Hacker and wife and plaintiff required the payment of a monthly rental, and such a lease containing an option to purchase, setting forth fully the obligations of the lessor and lessee, both as to the terms of the lease

and the covenants and conditions of the sale, should the lessee exercise his option to purchase, is an agreement upon sufficient consideration and forms a binding contract as to each of the parties. *House v. Jackson,* 24 Or 89, 32 P 1027; 3 Thompson, Real Property, Perm ed, 483, § 1325; Note, 137 ALR 375.

■ Such a contract does not pass to the optionee, so far as the option alone is concerned, any interest in the land until a valid election to buy has been made, in accordance with the terms of the option, which then changes the character of the parties from optionor and optionee to vendor and purchaser. *Herndon v. Armstrong,* 148 Or 602, 608, 36 P2d 184, 38 P2d 44; *Richanbach v. Ruby,* 127 Or 612, 630, 271 P 600, 61 ALR 1441; *Strong v. Moore,* 118 Or 649, 245 P 505.

■ However, such an option in a lease is "a continual obligation running with the lease" (*House v. Jackson,* supra, at page 96), and "any words in a writing under the hand, whether sealed or unsealed, of a person importing an agreement is a covenant." *Guide v. Wallis,* 130 Or 148, 153, 279 P 546.

■ While in England a contrary view is taken, the majority rule in this country, based upon what we believe is sound reasoning, is that although the option contained in a lease, of itself, until exercised by the optionee, grants no interest in the land, the right to purchase the property, based upon a valuable consideration, is a covenant that runs with the land, unless there is appropriate language used to make that covenant purely personal between the parties. 32 Am Jur 283, Landlord and Tenant, § 304; 51 CJS 635, Landlord and Tenant, § 81.

■ While the option itself is not effective as conveying the land or an interest therein, it is a conveyance in praesenti of a right to acquire the fee at a future time.

*Elliott v. Delaney,* 217 Mo 14, 116 SW 494; *McCormick v. Stephany,* 61 NJ Eq 208, 48 A 25.

■ We have said covenants running with the land are those "which have for their object something annexed to or inherent in or connected with land or other real property." *First Nat. Bank v. Hazelwood Co.,* 85 Or 403, 413, 166 P 955.

Professor Clark in his Covenants and Interests Running with Land, at page 96, said:

"* * * It has been found impossible to state any absolute tests to determine what covenants touch and concern land and what do not. The question is one for the court to determine in the exercise of its best judgment upon the facts of each case. Professor Bigelow has, however, in his article on *The Content of Covenants in Leases,* set forth a scientific method of approach to the problem which seems to afford the most practical working tests for the court to employ. The method he states is to ascertain the exact effect of the covenant upon the legal relations of the parties. In effect it is a measuring of the legal relations of the parties with and without the covenant. If the promisor's legal relations in respect to the land in question are lessened —his legal interest as owner rendered less valuable by the promise—the burden of the covenant touches or concerns that land; if the promisee's legal relations in respect to that land are increased—his legal interest as owner rendered more valuable by the promise—the benefit of the covenant touches or concerns that land. It is necessary that this effect should be had upon the legal relations of the parties as owners of the land in question, and not merely as members of the community in general, such as taxpayers, or owners of other land, in order that the covenant may run."

Following this rule, the option agreement contained in this lease concerns and touches the land conveyed

and the enjoyment thereof, for the lessee may, by proper exercise of his rights, terminate the lease agreement and hold the land not as a tenant, but as the owner of the fee. This right encourages the lessee to improve and make better the leased premises during the term thereof, which improvement and betterment, if made, he may retain by exercise of his right, and which improvements and betterments upon his failure to exercise his right will revert to and be of benefit to the owner. *Keogh v. Peck,* 316 Ill 318, 147 NE 266, 38 ALR 1151.

■ Covenants running with the land are binding upon and enforceable against subsequent purchasers with notice. *Fargo v. Wade,* 72 Or 477, 142 P 830; 32 Am Jur 283 Landlord and Tenant, § 304; 49 Am Jur 171, Specific Performance, § 148; 51 CJS 645, Landlord and Tenant, § 85.

That the defendants and each of them had notice of the option agreement, there can be no question, for the lease containing the option was duly filed of record and recorded in the deed records for Clatsop county, Oregon, on July 6, 1940, and the statute of Oregon providing for the recording of leases is as follows: (ch 158, Oregon Laws 1941):

> "Any instrument creating a leasehold interest in real property, which is executed by the person from whom the interest is intended to pass, being of lawful age, or by his lawful agent or attorney, and acknowledged, may be indexed and recorded in the records of deeds of real property in the county or counties where such real property is located. Such recordation shall constitute notice to third persons of the *rights* of the lessor and lessee under said instrument irrespective of whether said lessee is in possession of the real property." (Italics ours.)

■ Even though the defendants had notice of the option and its terms, they contend that the notice given by plaintiff to defendants Butler was insufficient, as it was not the notice required by the contract, and that a sufficient notice could only be given by service upon the Hackers. This because the use of the word "lessor" therein referred only to the original lessor, Hacker, and that although the Hackers had parted with all right, title, and interest in and to the said property, yet the word "lessor", as used, meant only the party executing the lease. Strictly speaking, a person who executes a lease is the lessor. *Dutton v. Dutton,* 122 Kan 640, 253 P 553. However, upon the execution of the lease and an entry by the lessee upon the premises the relationship created between the parties is that of landlord and tenant. 32 Am Jur 27, Landlord and Tenant, § 2. And the terms "lessor and lessee" and "landlord and tenant" are used almost interchangeably. *Stone v. City of Los Angeles,* 114 Cal App 192, 299 P 838.

To determine the manner in which the word "lessor" was used requires a construction of the contract, and in construing it we are bound by a cardinal principle of jurisprudence, enacted by statute into the laws of this state, "in the construction of an instrument, the intention of the parties is to be pursued, if possible." § 2-217, OCLA. While guides are set up by the statutes and by judicial expression to aid the court in ascertaining what the contracting parties intended by the words used, we do not believe it is necessary to restate those guides here, for they are not inflexible, their purpose being, as before stated, to ascertain what the parties probably intended, and technical niceties cannot always be strictly applied. "Business contracts must be construed with business sense, as they

naturally would be understood by intelligent men of affairs." Thus speaks Mr. Justice Holmes in The Kronprinzessin Cecilie, 244 US 12, 24, 61 L ed 960, 37 S Ct 490.

The parties to the contract provided for the assignment of the respective interest of each to other parties. They contemplated that after the formal execution of the lease they would stand as to themselves and subsequent holders of their rights in the relation of landlord and tenant. The words used in the lease are:

> "This agreement shall be binding upon and shall enure to the benefit of the parties hereto and their respective successors or assigns."

■ We are convinced from the wording of the entire contract that at the time of the execution of the lease containing the option in question the executing parties had in mind that after the execution thereof they and their successors and assigns would stand in a relationship of landlord and tenant, and the term "lessor", as used throughout the instrument generally, conveyed to the parties, "as intelligent men of affairs", the thought of the legal relationship of the parties; not the idea that a certain individual who had executed the lease must be given notice of an election to exercise the option, but that it must be given to anyone who was or might, by proper assignment, at that time, legally be the landlord.

Proper and timely notice of an election to purchase the property in accordance with the terms of the option having been made upon the landlord, the defendants John A. Butler and Therese K. Butler, his wife, and a proper tender having been made and all other requirements of the option having been by the plaintiff met, the judgment of the circuit court is affirmed.