Peter D. Norman and Thomas Albrecht appeal from an order enjoining Riscorp National Insurance Company and Riscorp, Inc. (together hereinafter referred to as "Riscorp"), from disbursing any funds to them in payment of Norman and Albrecht's transfer of Riscorp stock certificates back to Riscorp, and enjoining Norman and Albrecht from any efforts to obtain funds from Riscorp.
 I.
The plaintiff, Occupational Safety Association of Alabama Workmen's Compensation Fund ("the Fund"), is a self-insurance workers' compensation fund, established in February 1992, under § 25-5-9, Ala. Code 1975. The Fund was established to allow certain businesses to join together for the purposes of providing and receiving workers' compensation coverage. Initially, only four companies were involved. By 1996, the Fund had grown to 2,000 businesses, with $45 million in annual premiums. At that time, the Fund was one of the two largest self-insured funds in Alabama.
The Fund entered into an "Administrative Services Agreement" with Independent Association Administrators, Inc. ("IAA"). Norman had founded IAA in 1992, and was its president and a 50% stockholder. His partner, Albrecht, was also a 50% stockholder. The agreement between the fund and IAA provided that IAA shall "establish and coordinate necessary procedures and practices to be duties of the administrator required by the Bylaws, this Agreement and applicable state regulations." In addition, IAA appointed Norman the administrator for the Fund.
In the summer of 1996, Norman advised the Fund that it would be in the Fund's best interest to transfer its workers' compensation insurance contracts to Riscorp. The Fund alleges that, based upon the *Page 494 
representations made by Norman, the Fund's board of trustees voted to transfer all of the Fund's contracts for workers' compensation coverage to Riscorp. At Norman's suggestion, the Fund engaged Sterling Capital Advisors, Inc. ("Sterling Capital"), to render a "fairness opinion" on the proposed transfer agreement. The study for that fairness opinion was performed by the managing director of Sterling Capital, Gregory A. Weir. Weir issued an opinion stating that the proposed terms of the "Loss Portfolio Transfer Agreement" ("LPTA"), the contract that would transfer all of the Fund's contracts for workers' compensation to Riscorp, were fair for the Fund from a financial point of view. The Fund and Riscorp executed the LPTA on August 26, 1996.
On September 17, 1996, IAA merged with Riscorp. Norman and Albrecht received Riscorp stock in return for all of their shares of IAA stock. Subsequently, there was a dispute as to payments the Fund alleged Riscorp was required to make. On August 20, 1997, the Fund sued Riscorp and Norman. The Fund alleged that when Norman told the Fund that it should transfer all of its contracts to Riscorp, Norman and Albrecht were already negotiating the deal for the merger of IAA and Riscorp. According to the Fund, Norman and Albrecht received approximately $10.9 million in cash and stock from this deal. The Fund further contended that Norman and IAA had a conflict of interest and that they breached their fiduciary duties under the Administrative Services Agreement by recommending that the Fund transfer its contracts to Riscorp.
Riscorp and Norman moved to compel arbitration and to stay proceedings, based on an arbitration provision contained in the LPTA. On November 25, 1997, the trial court entered an order, upon the stipulation of the parties, staying the case pending settlement negotiations and mediation between the parties. The order provided that "if, at the end of said 90 day period (from the date of November 25, 1997), the parties have not settled, arbitration shall commence, provided that any party may apply to the Court for a ruling on" the motions to compel arbitration. The parties did not reach a settlement.
On July 13, 1998, pursuant to the terms of the arbitration agreement, the Fund gave Riscorp notice of a "demand" for arbitration and subsequently appointed an arbitrator. After Riscorp did not select an arbitrator within the time set out in the arbitration agreement, the Fund exercised its contractual right to select the second arbitrator. Also on July 13, 1998, the Fund amended its complaint to include Albrecht, IAA, Sterling Capital, and Weir as defendants; Riscorp and Norman were still named as defendants. The amended complaint sought damages for (1) breach of contract, (2) fraud, (3) breach of fiduciary duty, (4) negligence or wantonness, and (5) suppression; it also sought an accounting.
In August 1998, Albrecht moved to have the action dismissed as to him, for, among other reasons, insufficiency of service of process. Rule 12(b)(5), Ala.R.Civ.P. In addition, Norman, Albrecht, IAA, Sterling Capital, and Weir all moved to compel arbitration, based on the arbitration provision in the LPTA.[1] On September 23, 1998, the trial court granted Riscorp's motion to compel arbitration but denied the motions to compel arbitration with respect to the other defendants. Norman, Albrecht, IAA, Sterling Capital, and Weir appealed; the appeals were consolidated. See Norman v. Occupational Safety Ass'n of Alabama *Page 495 Workmen's Compensation Fund, 776 So.2d 788 (Ala. 2000).
On October 6, 1998, the Fund moved to compel arbitration, requesting that the trial court direct Riscorp to arbitrate before the properly appointed arbitrators. Riscorp denied receiving a proper notice of "demand" for arbitration from the Fund, and filed a "demand" for arbitration with the American Arbitration Association ("AAA"). The trial court conducted a hearing and, on November 5, 1998, granted the Fund's motion to compel arbitration, ordering that "[a]ll of the requirements in the arbitration provision of the contract are required to be followed" and that "[t]he Commercial Arbitration Rules will govern matters not contained [sic] or contemplated by the parties." Riscorp did not, at that time, file a mandamus petition contesting this order.
On November 18, 1998, the Fund applied for a temporary restraining order ("TRO") and moved for a preliminary injunction to prohibit the AAA from administering the arbitration. The trial court issued the TRO on November 18, 1998, and set the motion for a preliminary injunction for a hearing on November 24, 1998. The trial court allowed Riscorp to intervene in the preliminary-injunction matter. In an order dated December 1, 1998, the trial court granted the Fund's motion for a preliminary injunction and prohibited the AAA from administering the arbitration. Riscorp appealed. On January 11, 1999, Riscorp filed in this Court an "emergency motion" to stay arbitration proceedings. The Fund objected, pointing out that Riscorp had not challenged the order of November 5, 1998, by seeking a writ of mandamus. The Fund contended that the trial court could not have abused its discretion in entering against a third party an injunction that merely carried out its prior order granting the Fund's motion to compel. In response, on January 27, 1999, Riscorp filed a petition for a writ of mandamus with this Court. Riscorp's appeal and mandamus petition were consolidated. See Riscorp,Inc. v. Occupational Safety Ass'n of Alabama Workmen's CompensationFund, 796 So.2d 1062 (Ala. 2000).
This Court stayed all arbitration proceedings pending resolution ofNorman and Riscorp. While those cases were still pending before this Court, the trial court ruled on Albrecht's motion to dismiss that he had filed in conjunction with his motion to compel arbitration. On December 18, 1998, the trial court dismissed Albrecht from the case, without prejudice.
As previously noted, when IAA merged with Riscorp, Norman and Albrecht received shares of Riscorp stock. On June 20, 2000, ten days before this Court released the Norman and Riscorp opinions, Norman created, and transferred his Riscorp shares into, the "Norman Family Charitable Remainder Unitrust (the "Trust").[2] Sometime shortly thereafter, the Trust and Albrecht transferred the shares of Riscorp stock back to Riscorp.[3]
On June 30, 2000, this Court released the Riscorp and Norman opinions. In Riscorp (cases 1980524 and 1980691), 796 So.2d 1062, we affirmed the trial court's order granting the injunction prohibiting the AAA from administering the arbitration, and dismissed Riscorp's petition for a writ of mandamus because it was not timely *Page 496 
filed. In Norman (cases 1980076, 1980175, and 1980272),776 So.2d 778, we affirmed the trial court's order denying the motions to compel arbitration filed by Norman, Albrecht, IAA, Sterling Capital, and Weir.
On July 25, 2000, approximately 19 months after the trial court had dismissed Albrecht from the case, the Fund served him with another summons and complaint. Then, on July 28, 2000, the Fund filed a document entitled "Rule 64 Application for Seizure of Stock Certificates and Garnishment of Stock Certificates and Garnishment of Money and Motion for a Preliminary Injunction."[4] The Fund sought to have the trial court either seize the moneys held by Riscorp and due the Trust and Albrecht for the transfer of the Riscorp stock or to have the trial court enter a preliminary injunction against Norman and Albrecht, ordering them to pay such moneys into an interest-bearing account pending the resolution of this lawsuit. On August 8, 2000, Norman moved the trial court to strike or dismiss the Fund's motion, arguing that the trial court did not have the authority to restrain disposition of assets before judgment liability is established and that the Fund had failed to comply with the necessary statutory requirements. He also argued that Riscorp did not hold any of his stock or any moneys owed to him, and that, instead, Riscorp held cash proceeds of stock sold to Riscorp by the Trust. Norman also sent a letter to the trial court, arguing that, if the trial court seized the assets, his and Albrecht's due-process rights would be violated, and requesting an evidentiary hearing on the Fund's motion.
Riscorp also filed a response to the Fund's motion, acknowledging that it held moneys due to Albrecht but stating that it did not hold any stock or money belonging to Norman. Riscorp stated that it controlled stock due to be paid to the Trust. Albrecht did not appear before the trial court. Albrecht's first formal response to the Fund's motion was a motion to dismiss filed after the trial court had ruled on the motion.
On August 9, 2000, the trial court held a hearing on the Fund's motion. The parties presented oral arguments, but the trial court did not permit testimony. On August 15, 2000, the trial court granted the Fund's motion, enjoining Riscorp from disbursing any funds to Norman or Albrecht in payment of their transfer of Riscorp stock certificates back to Riscorp. The trial court further enjoined Norman and Albrecht "from any efforts to obtain the funds from Riscorp" and ordered Riscorp to pay to the court clerk "all proceeds which are due as a result of the transfer of the Stock Certificates." Subsequently, on August 23, 2000, Albrecht moved the trial court to dismiss the action against him, arguing that he was not a proper party to the suit. On September 6, 2000, Norman and Albrecht moved the trial court to set aside its order granting the Fund's motion. In support of their motion to set aside the order, Norman and Albrecht requested that the trial court "take notice" of the deposition testimony of the Fund's chairman, Charles Lawson, as well as their own deposition testimony. The trial court has yet to rule on those motions. Nevertheless, Norman and Albrecht appeal the order granting the Fund's motion.
 II.
To begin with, we note that "[t]his is a complicated matter requiring able management by the trial judge" and that "[a] trial judge assigned a case of the magnitude of the case out of which the proceedings now before us arise is *Page 497 
entrusted with a monumental task in simply managing the case." Riscorp,796 So.2d at 1065. We will review the trial court's order under an abuse-of-discretion standard. See TFT, Inc. v. Warning Sys., Inc.,751 So.2d 1238, 1241 (Ala. 1999) (a preliminary injunction is reviewed under an abuse-of-discretion standard).
 A.
Albrecht argues that the trial court had no authority to enter the seizure order against him because, when the trial court entered its order, he was no longer a party to this action. In its order, the trial court noted that when Albrecht filed his motion to dismiss, he also filed a motion to compel arbitration. The trial court then stated that, inNorman, 776 So.2d at 792, this Court recognized Albrecht as a defendant when it affirmed the trial court's denial of Albrecht's motion to compel arbitration. The trial court concluded:
 "Albrecht's actions sufficiently submit him to the jurisdiction of this Court. It is well settled that when a party intended to be served, appears in Court and defends himself, that he submits himself to the jurisdiction of the Court. The Alabama Supreme Court's recognition and acknowledgment of Albrecht as a defendant proves that Albrecht is a proper party to this action and that the statute of limitations has not run as to the claims that the Fund is making against Defendant Albrecht. Defendant Albrecht had notice and knowledge of the lawsuit and the claims made against him."
In its brief, the Fund relies on the conclusions reached by the trial court. It argues that Albrecht waived the right to contest proper service by substantially involving himself in the litigation process and that this Court has implicitly acknowledged this conclusion. However, neither the Fund nor the trial court addressed the fact that the trial court actually dismissed Albrecht from this case.[5] According to the case action summary sheet, the trial court dismissed Albrecht on December 18, 1998, and the Fund did not serve Albrecht with another summons and complaint until July 25, 2000. Thus, Albrecht was not a party to this action from December 18, 1998, to July 25, 2000. However, we must determine whether the trial court had the authority to enter the order against Albrecht after he was served on July 25, 2000.
Albrecht argues that the trial court lacked jurisdiction to enter the order against him because, he says, the period allowed by the statute of limitations had expired by the time he was served on July 25, 2000. SeeSmith v. Clark, 468 So.2d 138, 141 (Ala. 1985) (if a court lacks jurisdiction of a particular person, or if it denied that person due process, then that court's judgment is void and must be set aside). Albrecht did not properly raise this argument to the trial court because he never appeared for the hearing on the Fund's motion; however, the trial court addressed the argument because Norman had raised it in his responsive pleading.
The parties do not dispute that a two-year statute of limitations governs the claims against Albrecht. See § 6-2-38, Ala. Code 1975. Thus, the first question this Court must answer is when the two-year limitations period expired as to the claims against Albrecht. The Fund and Riscorp executed the LPTA on August 26, *Page 498 
1996; IAA merged with Riscorp on September 17, 1996. Thus, at the latest, any claim against Albrecht arose in September 1996.[6] The Fund did not amend its complaint to include Albrecht until July 13, 1998. Thus, at least 22 months had passed since the claims against Albrecht had arisen. When the trial court dismissed Albrecht on December 18, 1998, the limitations period began to run again.[7] The Fund did not serve Albrecht with a summons and complaint until July 25, 2000. Therefore, an additional 19 months had passed since Albrecht was dismissed. Thus, the 22 months preceding the Fund's initial attempt to include Albrecht as a defendant, added to the 19 months that passed after Albrecht was dismissed, exceeded the two-year limitations period set forth in § 6-2-38, Ala. Code 1975.
The next question we must address is whether Albrecht waived his statute-of-limitations defense. The Fund argues that Albrecht waived any objections to its motion because he failed to respond to the motion or to appear at the hearing on that motion. It relies on Rule 64(b)(2)(C), Ala.R.Civ.P., which provides that, after receiving proper notice, "the failure of the defendant to appear [at the hearing on a Rule 64 motion] shall be deemed a waiver of any objections to the pre-judgment seizure or attachment." The record contains no indication that Albrecht ever filed a responsive pleading with the trial court after he was served with the summons and complaint on July 25, 2000. Only Norman, and not Albrecht, appeared before the trial court in opposition to the Fund's motion. The trial court addressed its authority over Albrecht, however, apparently because Norman argued in his brief in opposition to the Fund's motion that Albrecht was no longer a party to this lawsuit.
Ordinarily, the failure to assert the defense of the statute of limitations in a *Page 499 
responsive pleading constitutes a waiver. See Bechtelv. Crown Central Petroleum Corp., 451 So.2d 793 (Ala. 1984). However, inSports World, Inc. v. Neil's Sporting Goods, Inc., 507 So.2d 480 (Ala. 1987), this Court addressed an issue very similar to the one in this case. In Sports World, the plaintiff sought an injunction. The trial court set a hearing for 13 days after the complaint was filed, but before the defendant had filed an answer. The trial court denied the injunction, and the plaintiff appealed before the defendant had filed an answer. On appeal, this Court held:
 "It would be unfair and unjustified for this Court to hold that [the] affirmative defenses were waived by the defendants because they were not specifically pleaded during the short time period allowed in this case, when, according to Rule 12(a), [Ala.R.Civ.P.], a defendant normally has thirty days in which to respond to a complaint."
507 So.2d at 483. Likewise, the Fund served Albrecht with a summons and complaint on July 25, 2000, and filed its motion on July 28, 2000. The trial court conducted its hearing on the motion on August 9, 2000. Thus, the hearing was conducted well before the expiration of the 30-day limit for Albrecht to file his responsive pleading with the trial court. Albrecht raised the statute-of-limitations defense in the first formal "response" he filed — his appellate brief to this Court.[8]
Therefore, we conclude that Albrecht did not waive the statute-of-limitations defense by failing to raise it to the trial court before the hearing and that his argument is not waived on appeal.
Thus, the trial court acted beyond its discretion in concluding that it had the authority to enter the order against Albrecht. Accordingly, Albrecht should be dismissed from this case and the order against him must be set aside as void. See Smith, 468 So.2d at 141.
 B.
Because we conclude that Albrecht is no longer a proper party to this case, we now consider the trial court's order only as it relates to Norman. As previously noted, the trial court enjoined Riscorp from disbursing any funds to Norman or Albrecht, enjoined Norman and Albrecht "from any efforts to obtain the funds from Riscorp," and ordered Riscorp to pay to the court clerk "all proceeds which are due as a result of the transfer of the Stock Certificates." Norman argues that the trial court lacked the authority to enter this injunction. We agree.
In support of its motion, the Fund filed an affidavit, which states, in relevant part:
 "It is the Fund's position that any stock or money obtained by Mr. Norman and Mr. Albrecht as a result of their breach of fiduciary duty is property rightfully owned by the Fund and should be transferred to the Fund. . . . The Fund fears that if Mr. Norman and Mr. Albrecht obtain cash from Riscorp, there is a risk that they will conceal, transfer, spend or otherwise dispose of this money and that the Fund will not be able to get it from them at the conclusion of this case."
Thus, the gravamen of the Fund's argument is that the proceeds at issue belong to the Fund because Norman breached his fiduciary duty to tell it that IAA intended to merge with Riscorp.
In Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund, Inc.,527 U.S. 308, 119 S.Ct. 1961, 144 L.Ed.2d 319 *Page 500 
(1999), the Supreme Court held that, in cases where a creditor plaintiff has no lien or equitable interest in a debtor defendant's assets, a federal district court has no authority to issue a preliminary injunction preventing the defendant from transferring its assets.[9] Grupo involved an association of investors, Alliance Bond Fund, Inc. ("Alliance"), that purchased notes issued by Grupo Mexicano ("Grupo"), a Mexican holding company involved in toll-road construction. Grupo fell into financial trouble and was unable to make an interest payment. In response, Alliance accelerated the notes' principal amount and sued in a federal district court for the amount due. Alleging that Grupo was at risk of insolvency and was planning to give Mexican creditors priority, Alliance sought a preliminary injunction, pursuant to Rule 65, Fed.R.Civ.P., essentially freezing Grupo's assets so that it could pay any future judgment obtained by Alliance. The district court granted the injunction, and the United States Court of Appeals for the Second Circuit affirmed. 143 F.3d 688
(1998).
In reversing, the Supreme Court framed the question as "whether, in anaction for money damages, a United States District Court has the power to issue a preliminary injunction preventing the defendant from transferring assets in which no lien or equitable interest is claimed." Grupo,527 U.S. at 310 (emphasis added). The Supreme Court relied on the rule that an unsecured creditor seeking legal remedies cannot obtain a preliminary injunction that freezes a debtor's assets in order to ensure the availability of funds to satisfy a future judgment. Id. at 330. The Supreme Court concluded, therefore, that because such a remedy was historically unavailable from a court of equity, district courts do not have the power to enjoin debtors from transferring assets in which no lien or equitable interest is claimed. Id. at 333.
Specifically, the Supreme Court held that federal courts have the equity jurisdiction that was "`exercised by the High Court of Chancery in England at the time of the adoption of the Constitution and the enactment of the original Judiciary Act,'" id. at 318, and that this jurisdiction did not then, and does not now, include an equitable power to assist a general creditor by restricting a debtor's use of his unencumbered property before judgment. Id. at 318-22. "[W]e . . . follow the well-established general rule," the Supreme Court noted, "that a judgment establishing the debt was necessary before a court of equity would interfere with the debtor's use of his property." Id. at 321. "The requirement that the creditor obtain a prior judgment is a fundamental protection in debtor-creditor law. . . ." Id. at 330. Because this kind of equitable relief — restricting a debtor's use of his unencumbered property before judgment — was a power historically unavailable in a court of equity, the Court held that the *Page 501 
federal district court did not have the power to issue a preliminary injunction preventing the debtor (Grupo) from disposing of any assets in which no lien or equitable interest was claimed. Id. at 333.[10]
Although the Supreme Court's holding on the jurisdiction of the federal district courts does not control Alabama courts' authority to issue injunctions, the analysis is persuasive and consistent with Alabama law. The common-law rule in Alabama has long been that, "[o]rdinarily, the property of the defendant, in an action at law, is not subjected to the payment of the demand against him, until that demand is sanctioned and established by the verdict of a jury, and the judgment of a court."Millard's Adm'rs v. Hall, 24 Ala. 209, 226-27 (1854) (emphasis added). Although the Fund claims that it is entitled to the proceeds held by Riscorp because Norman breached his fiduciary duty to the Fund, it provided no evidence to the trial court or to this Court indicating an equitable interest in these proceeds. Specifically, the Fund presented no evidence indicating that it ever actually had an ownership interest or legal title to any Riscorp or IAA stock. Thus, by seeking the proceeds resulting from the merger transaction, the Fund is actually seeking money damages rather than equitable relief. Therefore, we conclude that, because the underlying claims are for money damages, the trial court lacked the authority under Rule 65, Ala.R.Civ.P., to enjoin Riscorp from disbursing the proceeds or to enjoin Norman from making efforts to obtain the proceeds.
 C.
We turn finally to the trial court's authority to enter the order, pursuant to Rule 64, Ala.R.Civ.P. The procedure a party must follow to have the trial court seize the property of an opposing party is set forth in Rule 64(b)(1), Ala.R.Civ.P.:
 "(b) Procedure for Seizure of Property. Whenever any provision of law is invoked through which there is an attempt to seize property through judicial process prior to the entry of judgment, the procedure on application for such a pre-judgment seizure shall be as follows:
 "(1) Affidavit. The plaintiff shall file with the court an affidavit on personal knowledge, except where specifically provided otherwise, containing the following information:
 "(A) Description of Property. A description of the claimed property that is sufficient to identify the property and its location.
 "(B) Statement of Title or Right. A statement that the plaintiff is the owner of the claimed property or is entitled to possession of it, describing the source of such title or right and, if the plaintiff's interest in such property is based on a written instrument, a copy of said instrument must be attached to the affidavit.
 "(C) Statement of Wrongful Detention. A statement of specific facts which show that the property is *Page 502 wrongfully detained by the defendant and a statement of the cause of such detention according to the best knowledge, information and belief of the plaintiff.
 "(D) Statement of Risk of Injury. A statement of specific facts in support of the contention, if any, that there is risk of concealment, transfer or other disposition of or damage to the property to the injury of the plaintiff."
Rule 64(b)(2)(C) further provides that "[a]t such hearing the plaintiff shall have the burden of showing good cause for the pre-judgment seizure or attachment." In Ex parte Boykin, 568 So.2d 1243 (Ala.Civ.App. 1990), the Court of Civil Appeals stated:
 "The Rule 64 provisions were promulgated to assure that the constitutional guarantees of due process are not violated. See North Georgia Finishing, Inc. v. Di-Chem, Inc., 419 U.S. 601, 95 S.Ct. 719, 42 L.Ed.2d 751 (1975); Mitchell v. W.T. Grant Co., 416 U.S. 600, 94 S.Ct. 1895, 40 L.Ed.2d 406 (1974); Fuentes v. Shevin, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556
(1972); Jones v. Preuit Mauldin, 808 F.2d 1435, modified, 822 F.2d 998 (11th Cir. 1987) (Johnson, J., dissenting). Hence, these rules are to be strictly complied with."
568 So.2d at 1245.
In its affidavit, the Fund stated that the proceeds at issue belong to it because Norman breached his fiduciary duty to tell it that IAA intended to merge with Riscorp. However, the Fund has never actually had legal title in the Riscorp or IAA stock. Thus, the Fund has no legal title in the proceeds resulting from the merger transaction. Although the Fund stated facts in support of its allegation that Norman breached his fiduciary duty, it did not provide any facts supporting its contention that it was legally entitled to the proceeds from the transfer of the Riscorp stock.[11] Therefore, the Fund failed to comply with Rule 64(b)(1)(C), Ala.R.Civ.P., by not stating "specific facts which show that the property is wrongfully detained by the defendant and a statement of the cause of such detention." Because, as Boykin, 568 So.2d at 1245, states, parties seeking to have the trial court seize an opposing party's assets must strictly comply with Rule 64, Ala.R.Civ.P., the trial court acted outside its discretion in seizing the proceeds from Riscorp.[12]
 III.
The trial court's order granting the Fund's motion for a seizure of proceeds and a preliminary injunction is hereby reversed.
REVERSED AND REMANDED.
Moore, C.J., and Brown, Harwood, and Stuart, JJ., concur.
[1] Norman states that, because the trial court had not ruled on his October 1997 motion to compel arbitration, he again moved to compel arbitration.
[2] Samford University was named the remainder beneficiary of the trust; Norman and his wife, Delnora, were named the life-income annuitants.
[3] According to Norman and Albrecht, Riscorp was due to redeem the stock on or before August 2000 from the Trust for $2.4 million and from Albrecht for $1.2 million. However, Norman and Albrecht have yet to receive the $3.6 million.
[4] Rule 64, Ala.R.Civ.P., governs the prejudgment seizure of property through the judicial process. Rule 65 governs the issuance of preliminary injunctions.
[5] The issue whether Albrecht's dismissal was proper is not before this Court. Thus, we will not address whether Albrecht was properly served initially or whether he waived the right to proper service. However, we do note that the trial court dismissed Albrecht while Norman
was still pending before this Court and that we were not informed of this dismissal at that time. Thus, this Court recognized Albrecht as a defendant in Norman because he was still a party before us.
[6] In Home Insurance Co. v. Stuart-McCorkle, Inc., 291 Ala. 601,285 So.2d 468 (1973), this Court stated:
 "`If the act of which the injury is the natural sequence is of itself a legal injury to plaintiff, a completed wrong, the cause of action accrues and the statute begins to run from the time the act is committed, be the actual damage [then apparent] however slight, and the statute will operate to bar a recovery not only for the present damages but for damages developing subsequently and not actionable at the time of the wrong done; for in such a case the subsequent increase in the damages resulting gives no new cause of action.'"
291 Ala. at 608, 285 So.2d at 473 (quoting Kelly v. Shropshire,199 Ala. 602, 604-05, 75 So. 291, 292 (1917)).
[7] We do not decide whether the initial filing of the amended complaint tolled the running of the limitations period. Even if the statutory limitations period was tolled for the period while Albrecht was a defendant, when he was dismissed the running of the limitations period was no longer suspended and by the time Albrecht was re-served, the statutory limitations period had expired. Other courts also have interpreted the word "toll" to mean "suspend" or its equivalent. See, e.g., Bomba v. W.L. Belvidere, Inc., 579 F.2d 1067, 1070 (7th Cir. 1978) ("Tolling, strictly speaking, is concerned . . . with the circumstances in which the running of the limitations period may be suspended.");United States v. Neill, 952 F. Supp. 831, 833 (D.D.C. 1996) (request for foreign evidence "tolled" the running of the statute of limitations by "suspend[ing]" it until the foreign country took action on the request);Clark v. Milam, 847 F. Supp. 409, 421 n. 26 (S.D.W.Va. 1994) (describing "tolling agreement" as "suspending" the statute of limitations).
Black's Law Dictionary has defined "toll" the same way. Although it lists two definitions, one is specifically applicable to statutes of limitations: "To suspend or stop temporarily as the statute of limitations is tolled during the defendant's absence from the jurisdiction and during the plaintiff's minority." Black's LawDictionary 1488 (6th ed. 1990) (emphasis added). Ballentine's LawDictionary is in accord. See Ballentine's Law Dictionary 1282 (3d ed. 1969) ("to suspend or interrupt the running of the statute of limitations").
[8] The trial court has yet to rule on the motions filed by Albrecht and Norman after it had ruled on the Fund's motion.
[9] Numerous federal courts have also concluded that Grupo is limited to cases where a plaintiff has no lien or equitable interest in a defendant's assets. See, e.g., III Finance Ltd. v. Aegis Consumer FundingGroup, Inc. (Ms. No. 99 Civ. 2579, July 2, 1999, S.D.N.Y. 1999) (not published in Federal Supplement); Steadfast Ins. Co. v. Auto MarketingNetwork, Inc., [Ms. 99-1231, August 13, 1999] 191 F.3d 457 (7th Cir. 1999) (table) (the opinion is not published in the Federal Reporter, but appears at 1999 WL 623851 and at 1999 U.S. APP. LEXIS 19605); UnitedStates ex rel. Rahman v. Oncology Assocs., P.C., 198 F.3d 489, 492 (4th Cir. 1999). Also, where both equitable relief and money damages are sought, asset-freezing preliminary injunctions remain available if the injunction "is a reasonable measure to preserve the status quo in aid of the ultimate equitable relief claimed." Rahman, 198 F.3d at 497.
[10] The Supreme Court also recognized the effect of its ruling on Rule64, Fed.R.Civ.P.:
 "The remedy sought here could render Federal Rule of Civil Procedure 64, which authorizes use of state prejudgment remedies, a virtual irrelevance. Why go through the trouble of complying with local attachment and garnishment statutes when this all-purpose prejudgment injunction is available? More importantly, by adding, through judicial fiat, a new and powerful weapon to the creditor's arsenal, the new rule could radically alter the balance between debtor's and creditor's rights which has been developed over centuries through many laws — including those relating to bankruptcy, fraudulent conveyances, and preferences."
Grupo, 527 U.S. at 330-31.
[11] Although the Fund states that Norman transferred the Riscorp stock back to Riscorp, we note that Norman contends, and the record supports his contention, that he transferred the stock into the Trust and the Trust then transferred the stock back to Riscorp. We further note that, in its affidavit, the Fund did not claim simply that it was "entitled to possession of" the proceeds, Rule 64(b)(1)(B), but that the proceeds actually were "property rightfully owned by the Fund."
[12] Because we reach this conclusion, we pretermit discussion of the numerous other arguments raised by the parties. *Page 503