915 So.2d 1142 (2005)
RISCORP, INC.
v.
Peter D. NORMAN, as trustee of the Norman Family Charitable Remainder Unitrust, and Thomas K. Albrecht.
Peter D. Norman, as trustee of the Norman Family Charitable Remainder Unitrust, and Thomas K. Albrecht
v.
Riscorp, Inc.
1031514 and 1031946.
Supreme Court of Alabama.
March 18, 2005.
Opinion Overruling Rehearing June 17, 2005.
*1144 W. Stancil Starnes and Bryan O. Balogh of Starnes & Atchison, LLP, Birmingham; and James N. Walter, Jr., and Wyndall A. Ivey of Capell & Howard, P.C., Montgomery, for appellant/cross-appellee Riscorp, Inc.
J. Michael Rediker, Bert S. Nettles, Peter J. Tepley, Michael C. Skotnicki, and Latanishia D. Watters of Haskell Slaughter Young & Rediker, LLC, Birmingham; and Jerry L. Thornton, Hayneville, for appellees/cross-appellants Peter D. Norman, as trustee of the Norman Family Charitable Remainder Unitrust, and Thomas K. Albrecht.
Doy Leale McCall III of Hill, Hill, Carter, Franco, Cole & Black, P.C., Montgomery, for amicus curiae Alabama Defense Lawyers Association, in support of the appellant/cross-appellee Riscorp, Inc.
H. Hampton Boles, Ed R. Haden, and David Burkholder of Balch & Bingham, LLP, Birmingham, for amicus curiae Alabama Bankers Association, in support of the appellant/cross-appellee Riscorp, Inc.
E.J. McArthur, Jr., and Norbert H. Williams, Alabama State Employees Association, Montgomery, for amicus curiae Alabama State Employees Association, in support of the appellees/cross-appellants Peter D. Norman et al.
Joe Espy III of Melton, Espy & Williams, P.C., Montgomery, for amicus curiae Alabama Independent Insurance Agents, Inc., in support of the appellees/cross-appellants' application for rehearing.
WOODALL, Justice.
Riscorp, Inc., appeals, and Peter D. Norman, as trustee of the Norman Family Charitable Remainder Unitrust ("the Trust"), and Thomas K. Albrecht cross-appeal, from a judgment awarding the Trust $1,150,000 compensatory damages and $2,450,000 punitive damages, and awarding Albrecht $62,000 compensatory damages and $540,000 punitive damages, in their action against Riscorp alleging breach of contract and conversion. We reverse and remand in case no. 1031514 and we dismiss the cross-appeal (case no. 1031946).
This is the fourth time this Court has reviewed issues engendered by the interrelated transactions and relationships involved in this case. See Norman v. Occupational Safety Ass'n of Alabama Workmen's Compensation Fund, 811 So.2d 492 (Ala.2001) ("Norman II"); Riscorp v. Occupational Safety Ass'n of Alabama Workmen's Compensation Fund, 796 So.2d 1062 (Ala.2000); and Norman v. Occupational Safety Ass'n of Alabama Workmen's Compensation Fund, 776 So.2d 788 (Ala.2000) ("Norman I"). Much of the background of these transactions and relationships was set forth in Norman II, and we quote from it below, filling in with additional facts when necessary:

*1145 "The . . . Occupational Safety Association of Alabama Workmen's Compensation Fund (`the Fund')[] is a self-insurance workers' compensation fund, established in February 1992, under § 25-5-9, Ala.Code 1975. The Fund was established to allow certain businesses to join together for the purposes of providing and receiving workers' compensation coverage. . . . By 1996,. . . . the Fund was one of the two largest self-insured funds in Alabama.
"The Fund entered into an `Administrative Services Agreement' with Independent Association Administrators, Inc. (`IAA'). [Peter D.] Norman had founded IAA in 1992, and was its president and a 50% stockholder. His partner, [Thomas] Albrecht, was also a 50% stockholder. The agreement between the [F]und and IAA provided that IAA shall `establish and coordinate necessary procedures and practices to be duties of the administrator required by the Bylaws, this Agreement and applicable state regulations.' In addition, IAA appointed Norman the administrator for the Fund.
"In the summer of 1996, Norman advised the Fund that it would be in the Fund's best interest to transfer its workers' compensation insurance contracts to Riscorp. The Fund alleges that, based upon the representations made by Norman, the Fund's board of trustees voted to transfer all of the Fund's contracts for workers' compensation coverage to Riscorp. . . .
"On September 17, 1996, IAA merged with Riscorp [`the IAA merger']. Norman and Albrecht received Riscorp stock in return for all of their shares of IAA stock. Subsequently, there was a dispute as to payments the Fund alleged Riscorp was required to make. [In fact, two actions were filed in the Montgomery Circuit Court in 1997 arising out of the IAA merger.] On August 20, 1997, the Fund sued Riscorp and Norman. The Fund alleged that when Norman told the Fund that it should transfer all of its contracts to Riscorp, Norman and Albrecht were already negotiating the deal for the merger of IAA and Riscorp. According to the Fund, Norman and Albrecht received approximately $10.9 million in cash and stock from this deal. The Fund further contended that Norman and IAA had a conflict of interest and that they breached their fiduciary duties under the Administrative Services Agreement by recommending that the Fund transfer its contracts to Riscorp. [Another action was also filed in the Montgomery Circuit Court in 1997. In the second Montgomery County action, Norman and Albrecht sued Riscorp, alleging fraud in connection with a decline in the value of Riscorp stock. That suit was settled in early 1998. Under the settlement agreement, Norman and Albrecht each received from Riscorp (1) a cash payment, (2) a $1,150,000 loan, and (3) Riscorp stock, bringing their total stock ownership to 790,336 shares each. Norman and Albrecht each gave Riscorp a promissory note pledging their shares of stock as collateral for the loan. The notes were due to mature on the earlier of (1) January 9, 2002, or (2) `ten (10) days prior to the date of the "Ultimate Distribution,"' defined as `the date on which [Riscorp's board of directors] has authorized a complete distribution of assets in full satisfaction of all Riscorp Class A Common Stock.']
". . . .
". . . [O]n July 13, 1998, the Fund amended its complaint to include Albrecht . . . as [a] defendant[]; Riscorp and Norman were still named as defendants. The amended complaint sought damages for (1) breach of contract, (2) *1146 fraud, (3) breach of fiduciary duty, (4) negligence or wantonness, and (5) suppression; it also sought an accounting.
"[Negotiations began for a second merger in late 1999, by which Griffin Acquisition Corp. (`Griffin Acquisition'), a corporation formed and wholly owned by William Griffin, the founder of Riscorp, proposed to merge with Riscorp, pursuant to a `Plan and Agreement of Merger Among Griffin Acquisition Corp., William Griffin and Riscorp, Inc.' (`the Merger Agreement'). Under the Merger Agreement, each share of outstanding Riscorp Class A Common Stock was to be `cancelled and extinguished and . . . converted automatically into a right to receive . . . cash . . . upon surrender of the certificate formerly representing the Class A Common Stock' (`the merger consideration'). The merger consideration, as ultimately approved by the Riscorp shareholders, was $3.075 per share.]
". . . .
"As previously noted, when IAA merged with Riscorp, Norman and Albrecht received shares of Riscorp stock. On June 20, 2000, . . . Norman created, and transferred his Riscorp shares into, the `Norman Family Charitable Remainder Unitrust' (the `Trust'). Sometime shortly thereafter, the Trust and Albrecht transferred the shares of Riscorp stock back to Riscorp[, and the Trust executed a `pledge agreement' granting Riscorp a security interest in the 790,336 shares of stock it had acquired from Norman.]
". . . .
"[On July 20, 2000, the Merger Agreement became effective. Consequently, Riscorp deposited $43.8 million in an account at First Union National Bank (`First Union'), which served as `the depository and exchange agent, for shareholder payments.' Riscorp's brief, at 13. The exchange value of the shares owned by the Trust and Albrecht was $2,430,283.20 each, that is, 790,336 shares at $3.075 per share.]
". . . Then, on July 28, 2000, the Fund filed a document entitled `Rule 64[, Ala. R. Civ. P.,] Application for Seizure of Stock Certificates and Garnishment of Stock Certificates and Garnishment of Money and Motion for a Preliminary Injunction' [`the Rule 64 application']. The Fund sought to have the trial court either seize the moneys held by Riscorp and due the Trust and Albrecht for the transfer of the Riscorp stock or to have the trial court enter a preliminary injunction against Norman and Albrecht, ordering them to pay such moneys into an interest-bearing account pending the resolution of this lawsuit.
"[Riscorp learned of the Rule 64 application on July 31, 2000, and, four days later  ostensibly on the advice of legal counsel  instructed First Union to transfer $2,300,000 to Riscorp's account, on the theory that Riscorp was entitled to `set-off' the amounts of the two $1,150,000 loans it had made to Norman and Albrecht against the amount of the merger consideration sought by the Fund. On August 7, 2000, First Union complied with Riscorp's instructions.]
". . . .
". . . On August 15, 2000, the trial court granted the Fund's motion, enjoining Riscorp from disbursing any funds to Norman or Albrecht in payment of their transfer of Riscorp stock certificates back to Riscorp. The trial court further enjoined Norman and Albrecht `from any efforts to obtain the funds from Riscorp' and ordered Riscorp to pay to the court clerk `all proceeds which are due as a result of the transfer of the Stock Certificates.' [On August *1147 23, 2000, Riscorp paid into the circuit court $2,560,566.40, which represented $1,280,283.20 for the Trust and $1,280,283.20 for Albrecht. These amounts represented the remainders of $2,430,283.20, the total of the merger consideration for the Trust and for Albrecht, less the $1,150,000 set-offs. Norman and Albrecht appealed.]"
811 So.2d at 493-96 (footnotes omitted).
On June 29, 2001, in Norman II, this Court reversed the trial court's injunction, concluding that "the trial court acted outside its discretion in seizing the proceeds from Riscorp." 811 So.2d at 502 (footnote omitted). On July 19, 2001, Norman paid $1,150,000 into the Trust.[1] On July 25, 2001, the circuit court paid Albrecht and the Trust each $1,280,283.20 plus interest. The action the Fund filed in the Montgomery Circuit Court was later dismissed.
Meanwhile, Norman and Albrecht filed this action in the Lowndes Circuit Court. Norman "sue[d] individually, as a beneficiary of the . . . Trust, and also as a Trustee of [the] Trust, in order to assert causes of action which are individually owned by [the] Plaintiffs and other causes of action which are the property of or inure to the benefit of [the] Trust." As finally amended, the complaint named Riscorp and others as defendants.[2] The claims asserted against Riscorp in that complaint included breach of contract and conversion of the "Plaintiffs' stock and funds."
The breach-of-contract and conversion claims were tried to a jury, beginning on January 5, 2004. On the first day of the trial, the trial court entered a summary judgment in favor of Riscorp, which disposed of all of Norman's individual claims. It concluded that the claims alleged in the complaint were solely those of the Trust. In conjunction with that judgment, the court also ruled that damages for emotional distress were not recoverable for conversion. Thus, Albrecht also was not allowed to present evidence of, or to seek damages for, emotional distress.
Riscorp timely moved for a judgment as a matter of law ("JML"); the trial court denied Riscorp's JML motions.
The jury returned verdicts in favor of the Trust and Albrecht. It awarded the Trust $1,150,000 compensatory damages and $2,450,000 punitive damages. It awarded Albrecht $62,000 compensatory damages and $1,000,000 punitive damages. The trial court reduced Albrecht's punitive-damages award to $540,000, to comply with the damages limitations of Ala.Code 1975, § 6-11-21, but otherwise denied Riscorp's postverdict motion for a JML. Riscorp appealed (case no. 1031514). Albrecht and Norman, "as Trustee of the Norman Family Charitable Remainder Unitrust," cross-appealed from the judgment in favor of Riscorp on the claims for damages for emotional distress (case no. 1031946).

I. Case No. 1031514
On appeal, Riscorp contends that it was entitled to judgments as a matter of law on the Trust and Albrecht's breach-of-contract and conversion claims. The principles we apply in reviewing the denial of Riscorp's JML motions are well established:
"`[T]he Court uses the same standard the trial court used initially in granting or denying a JML. Palm Harbor *1148 Homes, Inc. v. Crawford, 689 So.2d 3 (Ala.1997). Regarding questions of fact, the ultimate question is whether the nonmovant has presented sufficient evidence to allow the case or the issue to be submitted to the jury for a factual resolution. Carter v. Henderson, 598 So.2d 1350 (Ala.1992). . . . In reviewing a ruling on a motion for a JML, this Court views the evidence in the light most favorable to the nonmovant and entertains such reasonable inferences as the jury would have been free to draw. Motion Industries, Inc. v. Pate, 678 So.2d 724 (Ala.1996). Regarding a question of law, however, this Court indulges no presumption of correctness as to the trial court's ruling. Ricwil, Inc. v. S.L. Pappas & Co., 599 So.2d 1126 (Ala.1992).'"
Johnson v. Stewart, 854 So.2d 544, 546-47 (Ala.2002) (quoting Delchamps, Inc. v. Bryant, 738 So.2d 824, 830-31 (Ala.1999)). We first address the breach-of-contract claims.

A. Breach-of-Contract Claims
The Trust and Albrecht base their breach-of-contract claims on the theory that they are third-party beneficiaries of the Merger Agreement among Riscorp, Griffin, and Griffin Acquisition. They contend that "Riscorp had a contractual duty to pay the merger consideration to the Norman Trust and Albrecht." The Trust and Albrecht's brief, at 34. Their theory is that Riscorp breached that duty as to the Trust and Albrecht by paying $2,560,566.40 of the merger consideration into the circuit court as ordered by the trial judge in Norman II, and as to the Trust, specifically, by instructing First Union, on August 4, 2000, four days after Riscorp learned of the Rule 64 application, to transfer $1,150,000 of the merger consideration to Riscorp's account as a set-off against the outstanding loan Riscorp had made to Norman.
Riscorp denies that the Merger Agreement affords the Trust and Albrecht third-party-beneficiary status. All parties agree, however, that the construction and application of the merger agreement is "governed by . . . the laws of Florida." Merger Agreement § 8.7 (emphasis added). Thus, we must decide whether, under Florida law, the Trust and Albrecht are third-party beneficiaries of the Merger Agreement.
Under Florida law, "[a] party is an intended beneficiary only if the parties to the contract clearly express, or the contract itself expresses, an intent to primarily and directly benefit the third party or a class of persons to which that party claims to belong." Caretta Trucking, Inc. v. Cheoy Lee Shipyards, Ltd., 647 So.2d 1028, 1031 (Fla.Dist.Ct.App.1994).
"Thus, in order to plead a cause of action for breach of a third party beneficiary contract, the following elements must be set forth:
"(1) a contract between A and B;
"(2) an intent, either expressed by the parties, or in the provisions of the contract, that the contract primarily and directly benefit C, the third party (or a class of persons to which that party belongs);
"(3) breach of that contract by either A or B (or both); and
"(4) damages to C resulting from the breach.
"Additionally, in order to find the requisite intent, it must be shown that both contracting parties intended to benefit the third party. It is insufficient to show that only one party unilaterally intended to benefit the third party."
Id.
Florida courts have also cited Restatement (Second) of Contracts § 302 (1979), which states:

*1149 "(1) Unless otherwise agreed between promisor and promisee, a beneficiary of a promise is an intended beneficiary if recognition of a right to performance in the beneficiary is appropriate to effectuate the intention of the parties and either
"(a) the performance of the promise will satisfy an obligation of the promisee to pay money to the beneficiary; or
"(b) the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance.
"(2) An incidental beneficiary is a beneficiary who is not an intended beneficiary."
(Emphasis added.) See Cigna Fire Underwriters Ins. Co. v. Leonard, 645 So.2d 28, 29-30 (Fla.Dist.Ct.App.1994); Horizon Images, Inc. v. Delta Color Graphics, Inc., 639 So.2d 186 (Fla.Dist.Ct.App.1994); Warren v. Monahan Beaches Jewelry Ctr., Inc., 548 So.2d 870, 872 (Fla.Dist.Ct.App.1989); Aetna Cas. & Sur. Co. v. Jelac Corp., 505 So.2d 37 (Fla.Dist.Ct.App.1987); Maryland Cas. Co. v. State Dep't of Gen. Servs., 489 So.2d 57 (Fla.Dist.Ct.App.1986).
In support of its argument that Albrecht and the Trust are not third-party beneficiaries of the Merger Agreement, Riscorp cites § 8.6 of that agreement, which states:
"8.6. Entire Agreement. This Agreement contains the entire agreement between [Griffin Acquisition] and RISCORP with respect to the Merger, and supersede[s] all prior arrangements or understandings with respect to the subject matter hereof. Except as otherwise contemplated in the covenants listed in Section 7.2 (which covenants shall be enforceable by the person or persons affected thereby following the Effective Time,[[3]]) this Agreement is not intended to confer upon any person other than the parties hereto any rights or remedies hereunder; provided that each current director and officer of RISCORP shall be deemed a third party beneficiary of this Agreement and shall be entitled to enforce the covenants of [Griffin Acquisition] contained in Section 5.10 hereof as if they were a party hereto."
(Some emphasis added.) Riscorp contends that "[n]umerous other courts have held that shareholders lack standing as third-party beneficiaries to merger agreements containing language similar to § 8.6." Riscorp's brief, at 25 n. 16 (emphasis added). We agree.
For example, In re Gulf Oil/Cities Service Tender Offer Litigation, 725 F.Supp. 712 (S.D.N.Y.1989), involved a merger agreement between Gulf Oil Company ("Gulf") and Cities Service Company ("Cities") that failed to materialize. 725 F.Supp. at 717. Cities' shareholders sued Gulf alleging that it had failed to follow through on a proposed acquisition and merger. 725 F.Supp. at 718. The shareholders "argue[d] that they [were] intended beneficiaries of the Merger Agreement and thus [could] sue Gulf directly under the Merger Agreement for its alleged failure to use its best efforts to effect the merger." 725 F.Supp. at 733.
However, that merger agreement in Gulf Oil stated: "`This agreement (including the Annex, documents and instruments referred to herein) (1) constitutes the entire agreement . . . among the parties . . . [and] (ii) . . . is not intended to confer *1150 upon any other person any rights or remedies.'" 725 F.Supp. at 733 (bracketed language and ellipses in original; emphasis added). The district court rejected the shareholders' argument, stating:
"Even the Corbin treatise, the leading proponent of the view that extrinsic evidence may be considered in determining whether third-party beneficiary status was appropriate, 4 Corbin on Contracts, § 776 at 7 (Supp.1971), has stated that
"`[I]f two contracting parties expressly provide that some third party who will be benefitted by performance shall have no legally enforceable right, the courts should effectuate the express intent by denying the third party any direct remedy.'
"4 Corbin on Contracts, § 777 at 25 (1951)."
725 F.Supp. at 733 (emphasis added). The court held that the shareholders were not entitled to sue as third-party beneficiaries, because, it concluded: "Explicit language in the Merger Agreement demonstrate[d] that the parties specifically intended not to confer third-party beneficiary status on anyone." 725 F.Supp. at 733. See also McKesson HBOC, Inc. v. New York State Common Retirement Fund, Inc., 339 F.3d 1087, 1091 (9th Cir.2003) (in an action by a surviving corporation against the former shareholders of the acquired company, former shareholders were not third-party beneficiaries of a merger agreement, which stated: "`This agreement . . . [is] not intended to confer upon any person other than the parties any rights or remedies.'"); Grace Bros., Ltd. v. Farley Indus., Inc., 264 Ga. 817, 820, 450 S.E.2d 814, 817 (1994) (former minority shareholders of an acquired corporation were not third-party beneficiaries of a merger agreement, by virtue of a section in the agreement stating that "`nothing in this Agreement, express or implied, is intended to confer upon any other person any rights or remedies of any nature whatsoever under or by reason of this Agreement'"); Cities Serv. Co. v. Gulf Oil Corp., 797 P.2d 1009, 1011 (Okla.Ct.App.1990) (in an action by the target corporation against the acquiring company for failure to follow through on a proposed acquisition and merger, target corporation could not "seek damages" on behalf of its shareholders as third-party beneficiaries, because the merger agreement stated: "`This agreement . . . (1) constitutes the entire agreement and supersedes all other prior agreements and understandings, both written and oral, among the parties. . . [and] (ii) . . . is not intended to confer upon any other person any rights or remedies. . . .'"); Brunswick Corp. v. Bush, 829 S.W.2d 352 (Tex.Ct.App.1992). For the application of this principle in contexts other than merger agreements, see Federal Mogul Corp. v. Universal Construction Co., 376 So.2d 716 (Ala.Civ.App.1979); Hrushka v. State, 117 N.H. 1022, 381 A.2d 326 (1977); Richmond Shopping Ctr., Inc. v. Wiley N. Jackson Co., 220 Va. 135, 255 S.E.2d 518 (1979).
The Trust and Albrecht do not discuss the cases cited by Riscorp or suggest how those cases may be distinguished. Instead, they contend that "section 8.6 [of the Merger Agreement] is nonsensical and was apparently drafted in error." The Trust and Albrecht's brief, at 31 (emphasis added). This is so, they say, because § 8.6 refers to "the covenants listed in Section 7.2," and, they argue, "there are no `covenants' in Section 7.2." The Trust and Albrecht's brief, at 31 (emphasis in original).
We disagree that there are no covenants in § 7.2. That section states:
"7.2. Effect of Termination. In the event of the termination and abandonment of this Agreement under Section 7.1, this Agreement shall become void *1151 and have no effect, without any liability on the part of any party or its directors, officers or stockholders except (i) as provided in Section 5.9 and (ii) to the extent that such termination results from the willful breach by any party hereto of any material representation, warranty, covenant, or agreement hereunder."
(Emphasis added.)
"In its broadest usage," the word "covenant" simply "means any agreement or contract." Black's Law Dictionary 363 (6th ed.1990). "A `covenant' is defined as `any words in a writing under the hand . . . of a person importing an agreement.'" Falk v. Amsberry, 46 Or.App. 565, 570, 612 P.2d 328, 331 (1980) (quoting Texas Co. v. Butler, 198 Or. 368, 373, 256 P.2d 259, 262 (1953)) (emphasis added).
Clearly, § 7.2 contains agreements, or "covenants," governing the exposure to liability of the "directors, officers or stockholders" of any party to the Merger Agreement in the event of termination of the merger. Section 7.2 is merely the second of two sections in Part 7 of the Merger Agreement, entitled "Termination of the Merger." Section 7.1(a) states that the Merger Agreement may be terminated at any time prior to the Effective Time (see note 3, supra), whether before or after the approval by the stockholders of Riscorp "by the mutual written consent of [Griffin Acquisition] and Riscorp." (Emphasis added.) Subsections (b) and (c) of § 7.1 set forth, in turn, the conditions under which Riscorp and Griffin Acquisition could unilaterally terminate the Merger Agreement. Section 8.6, by express reference to § 7.2, excludes officers, directors, and stockholders from the general exclusion of § 8.6, effectively conferring upon them third-party-beneficiary status in matters relating to termination. This case involves no such matter.
Section 5.10, the other section expressly referenced in § 8.6, also concerns officers and directors. More specifically, § 5.10 provides for the "indemnification of officers and directors." Essentially, § 5.10(a) requires Griffin Acquisition and Riscorp to maintain "directors' and officers' liability insurance . . . with respect to claims arising from facts or events which occurred at or before the Effective Time." Section 5.10(b) requires Riscorp, "[u]ntil expiration of the applicable statute of limitations period," to provide "each present or former director or officer of Riscorp . . . the indemnification rights" afforded to such persons "prior to the Merger." Section 5.10(c) specifically confers third-party-beneficiary status upon the officers and directors, by stating that the section "is intended to benefit" each officer or director, "each of whom shall be entitled to enforce" the section against Griffin Acquisition and Riscorp.
It is abundantly clear that § 8.6, in referring expressly to § 5.10 and § 7.2, is primarily concerned with officers and directors of the parties. However, while § 7.2 also is concerned with stockholders, it is clear that the parties intended to afford third-party-beneficiary status to stockholders only with regard to matters relating to termination of the Merger Agreement. Thus, there is no merit to the argument advanced by Albrecht and the Trust that § 8.6 is "nonsensical."
By specifically limiting the classes of persons entitled to third-party-beneficiary status, the parties to the Merger Agreement have not "clearly express[ed] . . . an intent to primarily and directly benefit," Caretta Trucking, 647 So.2d at 1031, Albrecht and the Trust under the circumstances presented here. On the contrary, the parties have "otherwise agreed." Restatement (Second) of Contracts § 302(1) (emphasis added). Because the "`contracting *1152 parties [have] expressly provide[d] that [third parties] who will be benefitted by performance shall have no legally enforceable right, the courts should effectuate the express intent by denying the third party any direct remedy.'" Gulf Oil, 725 F.Supp. at 733 (quoting 4 Corbin on Contracts § 777 at 25).
We conclude that, under Florida law, the Trust and Albrecht are not third-party beneficiaries of the completed Merger Agreement. The trial court erred, therefore, in denying Riscorp's motion for a JML on the breach-of-contract claims.

B. Conversion Claims
"To establish conversion, one must present proof of a wrongful taking, an illegal assumption of ownership, an illegal use or misuse of another's property, or a wrongful detention or interference with another's property. It is well settled that money may be subject to a conversion claim, where there is an obligation to keep that money intact or to deliver it. Generally, an action for conversion of money will not lie unless the money is specific and capable of identification."
Crown Life Ins. Co. v. Smith, 657 So.2d 821, 823 (Ala.1994) (citations omitted; emphasis added). See also Waddell & Reed, Inc. v. United Investors Life Ins. Co., 875 So.2d 1143 (Ala.2003).
The conversion claims of both Albrecht and the Trust are based on the theory that they each owned, as of July 28, 2000, the date the Rule 64 application was filed, an equal share of the merger consideration, namely, $4,860,566.40 ($2,430,283.20 × 2), each one's share being the product of the 790,336 shares held by each of them before the merger and the exchange value of $3.075 per share. Their complaint alleged that Riscorp wrongfully detained their funds from July 28, 2000, to July 25, 2001  the date on which the $2,560,566.40 that Riscorp had paid into the Montgomery Circuit Court was disbursed in compliance with the judgment of this Court in Norman II. In addition, the Trust  but not Albrecht  contends that Riscorp wrongfully withheld $1,150,000, which it obtained from First Union on August 7, 2000, and used as a set-off against the amount due on Norman's promissory note. Albrecht does not object to the set-off.
The Trust and Albrecht contend that these funds were subject to conversion, because, they insist, they were "segregated or singled out by Riscorp for benefit of Plaintiffs and other shareholders [in a special bank account] and [were] thus [sufficiently] identifiable." The Trust and Albrecht's brief, at 47. Thus, they argue, the elements of conversion are satisfied.
Riscorp, however, contends that Albrecht and the Trust "failed to prove that Riscorp intended `to assert control over the property of [the] plaintiff[s] as required to support a conversion claim." Riscorp's brief, at 37 (emphasis added). It insists that "[t]hese funds did not belong to the [Plaintiffs] and could not be converted." Id. at 50 (emphasis added). Thus, assuming, without deciding, that the merger consideration was sufficiently identifiable to support an action for conversion, the issue is whether Albrecht and the Trust, in the absence of a valid breach-of-contract claim, have demonstrated a sufficient interest in the contested portions of the merger consideration.
"The gist of the action [for conversion] is the wrongful exercise of dominion over property to the exclusion of or in defiance of a plaintiff's rights, where the plaintiff has a general or special title to the property or the immediate right to possession." Greene County Bd. of Educ. v. Bailey, 586 So.2d 893, 898 (Ala.1991) (citing Ex parte SouthTrust Bank of Alabama, *1153 N.A., 523 So.2d 407 (Ala.1988) (emphasis added)). See also Ex parte Anderson, 867 So.2d 1125, 1129-31 (Ala.2003). As to the $1,280,283.20 of the merger consideration claimed by both Albrecht and the Trust, they must show that they had an immediate right to possession that was thwarted by Riscorp. They cannot make such a showing.
The right of the former Riscorp shareholders to receive cash for their shares of stock arose directly out of the Merger Agreement. In that connection, the Merger Agreement states, in pertinent part:
"1.4 Payment of Cash for Class A Common Stock.

"(a) At the Effective Time, RISCORP shall irrevocably deposit or cause to be deposited with a bank or trust company to be designated by RISCORP and reasonably satisfactory to [Griffin Acquisitions] which is organized and doing business under the laws of the United States or any state thereof and has a combined capital and surplus of at least $100,000,000 (the `Disbursing Agent'), as agent for the holders of the shares of the Class A Common Stock, cash in the estimated aggregate amount required to effect conversion of shares of Class A Common Stock into the Merger Consideration at the Effective Time pursuant to Section 1.2 hereof. . . .
". . . .
"(b) After surrender to the Disbursing Agent of any certificate which . . . represented Class A Common Stock . . ., the Disbursing Agent shall promptly distribute to the person in whose name such certificate shall have been registered a check in an amount equal to the Merger Consideration multiplied by the number of Surrendered Shares. . . . Not less than ten (10) business days prior to the Closing Date, [Griffin Acquisitions] shall submit to RISCORP, letters of transmittal and other documents and materials to be mailed to the holders of Class A Common Stock to facilitate the surrender of such Class A Common Stock. [Riscorp] shall immediately following the Effective Time cause to be distributed to such holders such letters of transmittal and other documents and materials approved by Riscorp to facilitate such surrender."
(Emphasis added.)
Riscorp began mailing the "letters of transmittal" to the shareholders on July 28, 2000. Albrecht's letter of transmittal was sent to him on July 28, 2000, and the Trust's letter was sent to it on August 4, 2000. Albrecht returned his letter on August 1, 2000, and contends that August 1 is the day his share of the merger consideration was due. The Trust returned its letter of transmittal on August 11, 2000.
It is unclear why the Trust and Albrecht alleged that the wrongful detention began on July 28, 2000, that being merely the date that Riscorp began mailing letters of transmittal. Nevertheless, the obligation to mail the letters of transmittal, as well as the timing of the mailing, was expressly set forth in the Merger Agreement. It was the Merger Agreement that stated the shareholders' rights to receive merger consideration in the first place. It also defined the exchange value, as well as the timing and the mechanics of distribution, of the merger consideration.
Although the Merger Agreement required Riscorp to distribute the letters of transmittal "immediately following the Effective Time," the shareholders  being neither parties nor third-party beneficiaries of the Merger Agreement  could not enforce § 1.4, or any other provision of the Merger Agreement. Possessing no right to sue on the Merger Agreement, Albrecht and the Trust never had an "immediate right to possession" of their putative *1154 portion of the merger consideration. Otherwise stated, without a right in Albrecht and the Trust to control the time and manner of disposition of the merger consideration, there is no basis for a conversion claim. This is equally true as to the Trust's unique argument regarding the $1,150,000 Riscorp took in set-off from the merger consideration to satisfy the loan it had made to Norman. All actions taken by Riscorp affected funds that were never due and owing to Albrecht or the Trust under any agreement or arrangement enforceable by either of them of which this Court has been apprised.[4] For these reasons, the trial court erred in denying Riscorp's JML motions as to the conversion claims.

II. Case No. 1031946
The resolution of the claims of Albrecht and the Trust against Riscorp necessarily resolves the issues raised by them on their cross-appeal, which is case no. 1031946. Therefore, the cross-appeal is dismissed as moot.

III. Summary
In summary, the trial court erred in denying Riscorp's JML motions as to the claims of Albrecht and the Trust alleging breach of contract and conversion. Consequently, the judgment entered in favor of Albrecht and the Trust, case no. 1031514, is reversed and the cause is remanded. The cross-appeal of the Trust and Albrecht, case no. 1031946, is dismissed as moot.
1031514REVERSED AND REMANDED.
1031946APPEAL DISMISSED AS MOOT.
NABERS, C.J., and LYONS, SMITH, and PARKER, JJ., concur.

On Application for Rehearing
WOODALL, Justice.
On application for rehearing, Peter D. Norman, as trustee of the Norman Family Charitable Remainder Unitrust ("the Trust") and Thomas K. Albrecht accuse this Court of mischaracterizing their argument on original submission and of "announc[ing] a new rule of unsound business policy" "without support of factually-similar caselaw." Rehearing application, at 1. We write further to address these criticisms.
First, the Trust and Albrecht contend that, contrary to our opinion of March 18, 2005, it is their position that the letters of transmittal, in addition to letters dated July 19, 2000, and July 20, 2000, from Riscorp to Albrecht and Norman, respectively, along with attendant discussions, created contractsseparate from the Merger Agreementwhich provided an alternative basis for their breach-of-contract claims. However, this was not their position on original submission. At that time, they stated:
"Riscorp contends that [the Trust and Albrecht] did not present substantial evidence of . . . all the elements of a contract as to these letters. . . . [T]he argument has no merit, as it ignores substantial evidence in the record and misstates [the Trust and Albrecht's] position at trial that the letters were instruments *1155 confirming the already existing and agreed-upon arrangements, rather than themselves being independent contracts."
Brief of the Trust and Albrecht, at 36 (some emphasis added). "The well-settled rule of this Court precludes consideration of arguments made for the first time on rehearing." Water Works & Sewer Bd. of Selma v. Randolph, 833 So.2d 604, 608 (Ala.2002)(opinion on application for rehearing).
Second, the Trust and Albrecht contend that our "opinion is unsupported by any factually-similar cases involving `creditor' beneficiaries." Rehearing brief, at 6. They say that "[t]he handful of non-Florida opinions relied on by the Court all involved: (1) failed mergers and shareholders' subsequent attempts to force the purchase of their stock, or (2) other very unusual situations." Rehearing brief, at 7 (footnotes omitted). The distinction between a failed merger and a completed merger is important, because, the Trust and Albrecht insist, "once the merger was completed, the [Trust and Albrecht] clearly became `creditor' beneficiaries of the Merger Agreement, rather than simply `incidental' beneficiaries." Rehearing brief, at 8.
Even assuming that this argument has merit, it simply comes too late. This is so, because it is made for the first time on rehearing. Riscorp, in its principal brief, cited cases involving uncompleted mergers and provisions similar to § 8.6 of the Merger Agreement, thus inviting the Trust and Albrecht to distinguish between completed and uncompleted mergers and to discuss a "creditor-beneficiary" theory. They declined the invitation, as we noted on original submission, choosing, instead, to argue only that § 8.6 is "nonsensical." In fact, they never mentioned "creditor beneficiaries" on original submission, nor did they cite any case construing provisions similar to § 8.6. Thus, the Trust and Albrecht have presented nothing that warrants further review in this case.
APPLICATION OVERRULED.
NABERS, C.J., and LYONS, SMITH, and PARKER, JJ., concur.
NOTES
[1] Norman allegedly planned to fund the Trust with the merger consideration and to receive income from the Trust during his lifetime as a retirement benefit. His $1,150,000 payment was allegedly to be used to keep the Trust fully funded.
[2] Riscorp is the only remaining defendant in this case.
[3] "Effective Time" is defined in the Merger Agreement as the time of the "filing of the Articles of Merger with the Secretary of State of the State of Florida or at such time thereafter as is provided in the Articles of Merger."
[4] Although the Trust refers to a July 20, 2000, letter sent to Norman in connection with the letter of transmittal to the Trust, the Trust does not argue that either letter constituted a contract. Rather it refers to the letters merely as evidence of the amount and manner of payment. The Trust and Albrecht's brief, at 36-37. Other than the Merger Agreement, the Trust has suggested no basis on which it might claim the contested portions of the merger consideration.